**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**BRUCE W. GRAHAM**
Graham Law Firm P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

FILED

Sep 28 2012, 9:35 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

CURTIS BACON, JR., )
)
    Appellant-Defendant, )
)
        vs. )     No. 79A02-1112-CR-1163
)
STATE OF INDIANA, )
)
    Appellee-Plaintiff. )

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Randy J. Williams, Judge
Cause No. 79D01-1012-FB-35

**September 28, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Curtis Bacon appeals his convictions and sentence for aggravated battery as a class B felony, criminal recklessness committed while armed with a deadly weapon as a class C felony, carrying a handgun without a license as a class C felony, and unlawful use of a firearm as a sentencing enhancement. Bacon raises three issues, which we revise and restate as:

I. Whether the trial court abused its discretion in admitting a prior statement given by one of the State's witnesses to impeach the witness;

II. Whether the evidence is sufficient to sustain Bacon's conviction for aggravated battery as a class B felony; and

III. Whether Bacon's sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

The relevant facts follow. On the night of December 4, 2010, Nick's Nightclub in West Lafayette, Indiana, hosted a party attended by over two hundred people. At approximately 1:00 a.m. on December 5, 2010, a group which included Dion Parker, Drew Harris, Clarence Stephens, and Antwain Harrison arrived at the party.

A separate group consisting of Bacon, Matthew Russ, Quinten Russ, Jarrett Powell, Brandon Michael, Da'ion Nunley, Dominique Carter, and several others were also at the party. Everyone in this group brought weapons to West Lafayette but left the weapons in their vehicles when they entered the club.

While the song "Get Money" was playing, Harrison had his money out joking around with his friends. Transcript at 357. Stephens noticed that some people from Bacon's group were looking at Harrison as though they planned to "do something to

2

him," and Stephens told Harrison to put his money away, which Harrison did. Id. One of the individuals in Bacon's group made comments to Stephens, and Stephens felt threatened. At some point, a fight or a number of fights broke out in the club which included altercations between Bacon and those in his group and individuals in Harrison's group. Security guards stopped the music, sprayed mace, and ordered everyone out of the club.

Outside the club, there was confusion and a number of the individuals in Harrison's group were separated from each other. Harrison and Stephens retrieved their guns from their vehicle because of the fight in the club and the feeling that something was about to happen and then attempted to find others in their group. West Lafayette police officers arrived at the club and observed one to two hundred people gathered outside.

Bacon, Russ, and others in their group noticed Harrison and Stephens, approached them, and "jumped them." Id. at 496. Bacon pulled his gun and pointed it at either Harrison or Stephens, and Russ and the others "told [Bacon] no, be cool there is security . . . ." Id. at 497. Bacon stated "watch out, let me shoot him, I'm going to have to shoot him." Id. Bacon eventually lowered the gun but continued to hold it in his hand. As Carter approached Bacon in the parking lot, he heard Bacon state, "Bro, I ain't playing with them." Id. at 436. Russ observed Bacon "aim" his handgun at Harrison and shoot at him several times in rapid succession. Id. at 503. Bacon fired six shots, dropped his gun, and then fled. Bacon did not have a gun permit. Harrison suffered a gunshot wound to the back of his neck. Harrison's head jerked, he fell to the ground, blood and fluids

3

began to drain from the area around his head, and he lost consciousness. Stephens fired two shots in the direction of the person who shot Harrison. Police quickly arrived, and ordered Stephens to place his gun on the ground. Harrison was transported by ambulance to the hospital. Due to the gunshot injury, Harrison is considered "a C4 quadriplegic," he cannot move his arms and legs, he is wheelchair bound, he does not have control of his bowels or bladder, he needs to be rotated frequently to prevent bed sores, and he experiences significant discomfort. Id. at 173.

Powell was subsequently interviewed by police detectives, and the interview was recorded. During the interview, Powell stated that he "heard people saying, don't kill him, don't kill him, don't kill him, some dude was saying don't kill him" and that he observed Bacon aim his gun and shoot it. State's Exhibit at 67 at 5. During an interview with police, Bacon stated that he had fired his gun but that he was not aiming and that Harrison was shot accidentally.

On December 13, 2010, the State charged Bacon with Count I, aggravated battery as a class B felony; Count II, battery committed by means of a deadly weapon as a class C felony; Count III, battery resulting in serious bodily injury as a class C felony; Count IV, criminal recklessness committed by means of a deadly weapon resulting in serious bodily injury as a class C felony; Count V, criminal recklessness committed while armed with a deadly weapon as a class C felony; Count VI, carrying a handgun without a license as a class A misdemeanor; Count VII, carrying a handgun without a license with a prior conviction as a class C felony; and Count VIII, unlawful use of a firearm, a sentencing enhancement. At Bacon's jury trial, the State called Powell as a witness. Powell testified

4

that he could not remember being in West Lafayette in December 2010, the State sought to have Powell deemed a hostile witness, and the court granted the State's request and permitted the State to introduce into evidence for the purpose of impeachment Powell's previous statement to police. The jury found Bacon guilty on Counts I-VI, and Bacon then pled guilty on Counts VII and VIII.[1] The court merged Counts II, III, and IV with Count I and merged Count VI with Count VII. The court sentenced Bacon to fourteen years for his conviction in Count I, four years for his conviction in Count V, four years for his conviction in Count VII, and five years for the sentencing enhancement in Count VIII. The court ordered the sentences to be served consecutive to each other for an aggregate sentence of twenty-seven years.

## I.

The first issue is whether the court abused its discretion in admitting a prior statement given by one of the State's witnesses to impeach the witness. Bacon contends that the court committed reversible error when it allowed the State to impeach Powell with his prior unsworn statement to police. Bacon argues that the admission of the prior statement was not harmless as Powell was an eyewitness who identified Bacon as a shooter and that the probable impact of the evidence on the jury was extensive. The State maintains that the court did not abuse its discretion by allowing the State to impeach Powell and that, even if the impeachment was improper, any such error was harmless because the court admonished the jury to consider the evidence only for the purpose of impeachment and because overwhelming evidence of Bacon's guilt existed.

---

[1] The court's order indicates in one place that Bacon pled guilty to Count III rather than Count VIII, and this appears to be a scrivener's error.

5

The admission and exclusion of evidence is a matter within the sound discretion of the trial court, and we will review only for an abuse of discretion. Wilson v. State, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs "where the decision is clearly against the logic and effect of the facts and circumstances." Smith v. State, 754 N.E.2d 502, 504 (Ind. 2001). "Errors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party." Fleener v. State, 656 N.E.2d 1140, 1141 (Ind. 1995) (citations omitted).

Indiana Evidence Rule 607 provides that "[t]he credibility of a witness may be attacked by any party, including the party calling the witness." However, evidence admitted only for impeachment may not be used as substantive evidence. Lawrence v. State, 959 N.E.2d 385, 389 (Ind. Ct. App. 2012), trans. denied. Under Evidence Rule 607 "a party is forbidden from placing a witness on the stand when the party's sole purpose in doing so is to present otherwise inadmissible evidence cloaked as impeachment." Griffin v. State, 754 N.E.2d 899, 904 (Ind. 2001) (citing Appleton v. State, 740 N.E.2d 122, 125 (Ind. 2001)).

Here, prior to trial Powell had provided a statement to police during which he identified Bacon as the shooter. At trial, the State called Powell as a witness, and when questioned by the prosecutor Powell stated that he could not remember being in West Lafayette in December 2010 or providing a statement to police and that he was not going to answer the prosecutor's questions. The State sought to have Powell deemed a hostile witness, and the court granted the State's request. Bacon requested a conference outside the presence of the jury and argued that a party cannot call a witness for the sole purpose

6

of impeachment through a prior statement. Still outside the presence of the jury, the State elicited testimony from Detective Jonathan Eager that he had met with Powell during the week before Bacon's trial, that at the meeting Powell had identified Bacon as the shooter, that Powell had been initially reluctant to testify but then had recalled the events of the day of the offense and was cooperative, and that while it was undetermined whether Powell would cooperate at trial his reluctance had subsided and he recalled the events of the shooting. The court permitted the State to question Powell about the identity of the shooter and, when he continued to state that he could not remember, confront him with a portion of his recorded interview statement to police.

Based upon the record, we cannot say that Powell's testimony was offered for the sole purpose of impeaching him with his statement to police in which he had identified Bacon as the shooter. See Edmond v. State, 790 N.E.2d 141, 146 (Ind. Ct. App. 2003) (holding that a witness's testimony was not offered for the sole purpose of impeaching the witness with his prior statement in which the witness had identified the defendant as the shooter), trans. denied.

In addition, any possible error in the admission of Powell's previous statement was harmless. Powell's testimony, including the identification of Bacon as the person he observed point and shoot his firearm, was substantially similar to the testimony of two other witnesses who observed Bacon aim his gun and shoot at Harrison. See id. (holding that any possible error in the admission of the evidence would have been harmless because the witness's testimony, including the identification of the defendant as the shooter, was substantially similar to the testimony of another witness). Accordingly,

reversal of Bacon's convictions on the basis of the court's admission of Powell's previous statement is not warranted.

## II.

The next issue is whether the evidence is sufficient to sustain Bacon's conviction for aggravated battery as a class B felony. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. Jordan v. State, 656 N.E.2d 816, 817 (Ind. 1995), reh'g denied. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. Id. We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Id.

The offense of aggravated battery is governed by Ind. Code § 35-42-2-1.5, which provides:

> A person who knowingly or intentionally inflicts injury on a person that creates a substantial risk of death or causes:
>
> > (1)     serious permanent disfigurement;
> >
> > (2)     protracted loss or impairment of the function of a bodily member or organ; or
> >
> > (3)     the loss of a fetus;
>
> commits aggravated battery, a Class B felony.

To convict Bacon of aggravated battery, the State needed to prove that Bacon knowingly or intentionally inflicted an injury on Harrison that created a substantial risk of death or caused serious permanent disfigurement or protracted loss or impairment of the function of a bodily member or organ.

8

A person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so. Ind. Code § 35-41-2-2(a). A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so. Ind. Code § 35-41-2-2(b).

Bacon argues that there was insufficient evidence to demonstrate that he intended to shoot the victim and that, while his conduct may have been reckless, it was not intentional. Bacon acknowledges his admission that he fired a weapon, but asserts that no forensic evidence linked the bullet that struck Harrison to a weapon fired by Bacon, that none of the police officers at the scene actually saw the shooting occur, and that the other witnesses could not say whether Bacon was the person who shot Harrison. The State argues that Bacon admitted his intention to shoot the victim and the fact that Bacon fired six shots showed that he intended to shoot the victim and not merely scare him. The State also argues that the evidence, including Russ's testimony and the evidence that Bacon was the only shooter besides Stephens in the club parking lot, was sufficient to show that Bacon was the person who fired the shot that struck Harrison.

We note that intent is a mental function, and absent an admission by the defendant it must be determined from a consideration of the defendant's conduct and the natural and usual consequences thereof. Spann v. State, 632 N.E.2d 741, 743 (Ind. Ct. App. 1994) (citing Metzler v. State, 540 N.E.2d 606, 609 (Ind. 1989)). The trier of fact usually must resort to "reasonable inferences based upon an examination of the surrounding circumstances to determine whether, from the person's conduct and the natural

9

consequences that might be expected from that conduct, a showing or inference [of] the intent to commit that conduct exists." Id.

We also note that identity may be established entirely by circumstantial evidence and the logical inferences drawn therefrom. Bustamante v. State, 557 N.E.2d 1313, 1317 (Ind. 1990). Inconsistencies in identification testimony impact only the weight of that testimony, because it is the jury's task to weigh the evidence and determine the credibility of the witnesses. Gleaves v. State, 859 N.E.2d 766, 770 (Ind. Ct. App. 2007). As with other sufficiency matters, we will not weigh the evidence or resolve questions of credibility when determining whether the identification evidence is sufficient to sustain a conviction. Id. Rather, we examine the evidence and the reasonable inferences therefrom that support the verdict. Id.

The evidence most favorable to Bacon's aggravated battery conviction reveals that Bacon fired six shots at Harrison and that one of the bullets struck Harrison in the neck rendering him quadriplegic. Carter testified that he heard Bacon state "Bro, I ain't playing with them" and then observed him shoot his gun. Transcript at 436. Russ testified that Bacon pointed his gun at Harrison and Stephens and stated "watch out, let me shoot him, I'm going to have to shoot him." Id. at 497. Russ further testified that he observed Bacon "aim" his gun at Harrison and shoot several times in rapid succession and saw Harrison's head "jerk." Id. at 502-503. Russ testified that the first gunshots were fired by Bacon, that he saw Harrison's head jerk, and that he then heard the second round of shots. Also, during a statement to police, Bacon stated that he had fired his gun but that he was not aiming and that Harrison was shot accidentally. The jury was able to

10

consider the testimony and evidence presented by the State regarding Bacon's involvement in the shooting and his intent at the time of the shooting.

Based upon our review of the evidence as set forth in the record and above, we conclude that sufficient evidence exists from which the jury could find Bacon guilty beyond a reasonable doubt of aggravated battery as a class B felony. See Wilder v. State, 716 N.E.2d 403, 405 (Ind. 1999) (noting that it is the duty of the fact-finder to assess the credibility of witness testimony and finding that the State presented evidence of the defendant's identity as the perpetrator involved in the offense); Spann, 632 N.E.2d at 743-744 (holding that there was ample evidence from which the jury could conclude beyond a reasonable doubt that the defendant knowingly or intentionally inflicted an injury that created a substantial risk of death or caused a protracted loss or impairment of a bodily member or organ and noting that the jury was free to draw reasonable inferences from the evidence presented to determine the defendant's intent when he shot the victim at close range in the abdomen).

### III.

The next issue is whether Bacon's sentence is inappropriate. Indiana Appellate Rule 7(B) provides that this court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule,

11

the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate.[2] <u>Childress v. State</u>, 848 N.E.2d 1073, 1080 (Ind. 2006).

Bacon argues that numerous persons who attended the party were armed, including Harrison, that he had four children and child support obligations, that he had a minimal criminal history, and that while Harrison's injuries were severe they were partially based on Harrison's own actions and the culture and lifestyle which both he and Bacon maintained. Bacon asserts his aggregate sentence of twenty-seven years is excessive and inappropriate and requests a reduction of the sentence to an appropriate level.

The State argues that the nature of the offense justifies Bacon's sentence, including that Bacon shot Harrison in the neck, rendering him permanently quadriplegic, and that in firing six shots into a crowded parking lot Bacon endangered many people. The State also argues that Bacon's character justifies his sentence, including the fact that the instant offense was his second handgun offense in three years and that at the age of twenty-one Bacon illegally carried a handgun, that Bacon had been arrested for possessing an illegal drug, that he showed a total absence of remorse, that other than a tax refund which had been garnished Bacon never made any child support payments and failed to show any undue hardship on his dependents due to his incarceration, and that the presence of other firearms did not justify or mitigate Bacon's action of shooting Harrison.

---

[2] We observe that Bacon also appears to argue that the trial court abused its discretion in sentencing him and in failing to identify several mitigating factors that were supported by the record. However, we need not address this issue because we elect to exercise our option to review Bacon's sentence under Ind. Appellate Rule 7(B). <u>See</u> <u>Windhorst v. State</u>, 868 N.E.2d 504, 507 (Ind. 2007) (holding that where the court on appeal finds that a trial court abused its discretion in sentencing the defendant, the court may either remand for resentencing or exercise the appellate court's authority to review the sentence under Ind. Appellate Rule 7(B)), <u>reh'g</u> <u>denied</u>.

Our review of the nature of the offense reveals that, following a fight inside the nightclub, Bacon, who did not have a gun permit, together with one or more of the others in his group approached Harrison and Stephens in the parking lot outside the club, drew his gun, aimed it at Harrison, and shot at Harrison six times. As a result of the gunshot injury, Harrison is quadriplegic, cannot move his arms and legs, is wheelchair bound, does not have control of his bowels or bladder, and experiences significant discomfort. Our review of Bacon's character reveals that he was convicted of carrying a handgun without a license as a class A misdemeanor in 2008. Bacon was also arrested for possession of marijuana in 2009. After due consideration, we conclude that Bacon has not sustained his burden of establishing that his aggregate sentence of twenty-seven years is inappropriate in light of the nature of the offense and his character.

For the foregoing reasons, we affirm Bacon's convictions and sentence.

Affirmed.

FRIEDLANDER, J., and PYLE, J., concur.