**John B. MASON, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 182S41.**

Supreme Court of Indiana.

Aug. 5, 1983.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant John B. Mason was found guilty by a jury in the Grant Superior Court of rape, a class A felony, and criminal confinement, a class B felony. He subsequently was sentenced by the trial judge to fifty years imprisonment for the rape conviction and to ten years imprisonment for the criminal confinement conviction. Said sentences were ordered to be served consecutively. Appellant now directly appeals and raises the following issue for our review: 1. whether the jury verdicts finding Appellant guilty of rape and confinement are contrary to law inasmuch as Appellant allegedly proved by a preponderance of the evidence that he was insane when these crimes were committed.

The facts tend to show that during the evening of August 23, 1980, fourteen year old J.F. was with some friends at a residence in Gas City, Indiana. At approximately 12:30 a.m., J.F. decided to telephone her mother to advise her that she was spending the night with one of her girl friends. Since there was not a phone where J.F. was visiting, she walked to a nearby service station to make her call. As she walked toward the station, Appellant pulled up in a maroon Chevrolet Impala automobile and flashed a silver badge. Appellant asked J.F. if she knew that she was out after curfew and if she knew what could happen. J.F. responded that she knew she was out after curfew and would return to her friend's house immediately. Appellant asked J.F. for her name, address and telephone number which he wrote in a little black book. He also asked for the friend's address. Appellant directed J.F. to step into his car and told her that he would take her to her friend's house. J.F. got into the car believing Appellant to be a police officer. Appellant thereupon told J.F. that he thought she needed a tour of the juvenile detention home and that he was going to take her there. Appellant actually took J.F. to the archery range behind the Grant County F.O.P. building where he threatened her with a knife and raped her. When J.F. resisted, Appellant hit her in the face. After they left the vicinity of the F.O.P. building, Appellant told J.F. several things about himself. He said that the badge he had belonged to his father, that he was twenty-five years old, and that he was called "Ace" by his friends. As Appellant drove past the Brinker Heights area, he told J.F. that he was raised there. He also told her that he had been in and out of jail and that she would be in trouble if she told on him because he had friends. J.F. subsequently was released and shortly thereafter reported the incident to her mother, who called the police. J.F. was taken to a hospital's emergency room for an examination which revealed a fresh contusion on her face and what appeared to be semen in her vaginal canal. While at the hospital, J.F. selected Appellant's photograph from "mug books" provided by the police. Appellant was arrested during the following day and found to be carrying a knife in his pants pocket. In his apartment was found a black billfold containing a special police badge. In his Chevrolet Impala were found a notebook containing the victim's name, address and telephone number, an eyedropper bottle, a pack of Camel cigarettes, a Zippo type lighter, a yellow Bic lighter and a sixteen ounce can of Miller's beer. J.F. stated that she saw such items in Appellant's car when she was assaulted. The evidence also revealed that two or three other young women had been approached by Appellant in a similar manner to that of this victim but the other women refused to get into Appellant's car.

I

Appellant concedes that his invocation of an insanity defense placed on him

the burden of proving his insanity by a preponderance of the evidence. Ind.Code § 35–41–4–1(b) (Burns 1979); *Basham v. State,* (1981) Ind., 422 N.E.2d 1206. His present contention is that the evidence showing him insane at the time of the commission of these crimes was so overwhelming that he must have carried his burden by a preponderance of the evidence and therefore the guilty verdicts were contrary to law. The standard of review on this issue is well established. When the sufficiency of the evidence of insanity is questioned by an appellant who has suffered a negative judgment on the question, this Court will reverse only when the evidence is without conflict and leads to but one conclusion which the trier of fact did not reach. *Ward v. State,* (1982) Ind., 438 N.E.2d 750; *Turner v. State,* (1981) Ind., 428 N.E.2d 1244; *Thomas v. State,* (1981) Ind., 420 N.E.2d 1216.

■ The jury in the instant case heard conflicting evidence on the issue of Appellant's sanity. There was testimony at trial to the effect that Appellant several times molested his younger sisters and once raped his fifteen year old sister. There also was testimony that Appellant was charged with the murder of his father and found not guilty by reason of insanity. Unfortunately, Appellant was released from the Norman Beatty Memorial Hospital when that institution was changed from a state mental institution to a prison. Certain psychiatrists initially found Appellant unable to stand trial for the instant crimes because they believed him unable to sufficiently understand the charges against him and to cooperate with his counsel. After some treatment, however, the staff of the institution at which Appellant was incarcerated determined that he was able to stand trial.

Three psychiatrists examined Appellant and testified about him at trial. The two court appointed psychiatrists, Doctors Stewart and Musselman, stated that although they believed Appellant to be suffering from some mental illness, they nonetheless believed him sane at the time of the offense. Dr. Stewart specifically testified that during his first examination of Appellant, he found Appellant's thought processes sufficiently confused to render Appellant incapable of appreciating the proceedings against him and incompetent to stand trial at that time. After examining Appellant on two subsequent occasions, however, Dr. Stewart found Appellant's thought processes sufficiently clear to enable him to understand the proceedings. Dr. Stewart's opinion was, therefore, that Appellant was sane and able to appreciate the wrongfulness of his actions. Dr. Musselman testified that he had professionally seen Appellant from time to time since Appellant was about eighteen years of age. Appellant was nearly twenty-six years old at trial. Dr. Musselman also specifically stated that he did not believe that Appellant was insane at the time of this incident. The defense called Dr. Hanus Grosz, a psychiatrist, who stated his opinion that Appellant was legally insane at the time of this incident. Dr. Grosz based his opinion upon his finding that Appellant could not control his actions and could not distinguish right from wrong. Two of the three experts testifying in this case, therefore, were of the opinion that Appellant was sane at the time of the instant crimes. In addition to the expert testimonies, the victim testified that Appellant's speech and demeanor did not appear to be abnormal during the course of the crime. There also was evidence that Appellant attempted to approach two other women in the same manner as the instant victim was approached. Appellant amply showed himself able to plan his actions and to be concerned about being reported and punished for them.

This Court has stated that one who interposes an insanity defense at trial and fails thereon has a monumental burden on appeal to upset the findings of the trier of fact. This is because such an appellant appeals from a negative finding and the issue accordingly is not whether the finding was sustained by the evidence but whether the finding was contrary to all of the evidence and hence contrary to law. *Turner, supra.* It is only when the evidence is without conflict, the evidence leads to but

one conclusion and the trier of fact reached an opposite conclusion, that the decision predicated upon the negative finding will be disturbed as contrary to law. *Turner, supra.* Although the evidence in the instant case was in conflict, there was ample evidence to justify the jury in reaching the decision it did on the issue of Appellant's insanity. The jury's finding therefore was not contrary to law. The trial court is in all things affirmed.

GIVAN, C.J., and DeBRULER, HUNTER, and PRENTICE, JJ., concur.