**Kenneth METZLER, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 49S00–8802–CR–262.

Supreme Court of Indiana.

July 7, 1989.

William L. Soards, Soards, Carroll & Fruechtenicht, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–Appellant Kenneth Metzler was charged in forty-three (43) counts in the Marion Superior Court Criminal Division 2. He waived jury and the cause was tried to the court. The trial court found Metzler guilty of one (1) count of Murder; eighteen (18) counts of Attempted Murder; seven (7) counts of Battery, one (1) count of Operating a Vehicle With Over .10% Alcohol in Blood Resulting in Death, a Class C felony; and six (6) counts of Operating a Vehicle With .10% Alcohol in Blood, Resulting in Serious Bodily Injury, Class D felonies.

The trial court sentenced Metzler to a term of forty (40) years on Count I, Murder; and thirty (30) years on Count II, Attempted Murder, Count II to run consecutive to Count I. The remaining counts of attempted murder were ordered to run concurrent with Count I, but consecutive to Count II. The court did not impose sentences on the counts of battery or the alcohol violations because he found that all of said counts merged into the attempted murder counts. The effect of the court's sentence was to give Metzler an executed term of seventy (70) years.

Three issues are presented for our review in this direct appeal as follows:

1. sufficiency of the evidence to support the judgment;

2. error of the trial court finding Metzler guilty over the testimony supporting his plea of not guilty by reason of insanity and in mitigation; and

3. error in ordering Metzler's sentences for murder and attempted murder to run consecutively.

The facts show that at about 10:00 a.m. on February 21, 1987, Metzler drove his girlfriend, Patricia Leake, to the Bench Warmer Pub on South Madison Avenue in Indianapolis. Leake worked at the Bench Warmer Pub. Metzler left but returned about 1:00 p.m., had something to eat and then began drinking "Jack and Coke." Metzler and Leake then argued over his drinking and Metzler apparently discovered Leake had gone out after work with a group of people on a prior evening. He was upset that Leake had not told him about the prior evening. Leake got off work about 5:00 p.m. and sat at one of the tables with Metzler and some other people. Through the evening, Metzler continued to make comments about Leake having gone out and not telling him. He seemed to be joking about it and said there might have been someone at the Pub to see Leake the prior evening. Metzler got up, took Leake's car keys and left the Pub. Leake and the others moved from the table to the bar.

Metzler returned between 6:00 and 6:30 p.m., walked up behind Leake and asked her to leave with him. Leake agreed to go if he would let her drive. He refused and asked her a second time to leave. Leake made the same response and turned back to the bar at which time Metzler grabbed her from behind and pulled her from the bar stool. He dragged her through the front door of the Pub until the bartender and one of the patrons stopped him. Metzler fought one of them and the bartender talked to Metzler and told him to leave. Metzler seemed calm at that time but grabbed Leake's purse and left. Leake followed him out and reached into the passenger side of her car, which Metzler was driving, to get her purse. Leake went back into the bar, but when Metzler again returned, she went back outside to talk with him. She remained outside the car and again told Metzler she would go with him if she could drive, but Metzler still refused. He then stated to her that if she wanted her car so badly, how would she like to see it inside, indicating the Pub. Metzler sped away in the direction of their apartment and Leake returned to the Pub. Shortly thereafter, Leake got a telephone call from Metzler. After she hung up the telephone she told the bartender that Metzler seemed angry and said he was going to work. A few minutes later Metzler drove his truck through the front and into the Pub. The truck reached a point of eighty feet into the Pub from the outside wall. As a result, eighteen people were injured and one woman was killed. Metzler was discovered unconscious in the cab of his truck. When aroused, he wanted to know what had happened, where Leake was, and how many people he had killed. He was subsequently tested for blood alcohol content by breath and blood analysis and both showed his blood alcohol content a short time after the incident was .13%.

## I

Metzler's contention is that the evidence was insufficient to prove he was guilty of any of the charges beyond a reasonable doubt. Specifically, he asserts the evidence did not show he was acting with the requisite intent to commit the crimes as charged. Furthermore, he claims the evidence failed to show he engaged in an overt act constituting a substantial step toward the commission of the crimes. Finally, he asserts the evidence was totally circumstantial and provided only conjecture, speculation, and inference. Metzler also claims the trial court denied him the presumption of innocence although he does not support this contention.

Metzler concedes that in reviewing sufficiency claims on appeal, this Court does not weigh the evidence or judge credibility. We are constrained to consider only that evidence most favorable to the State together with all reasonable and logical

inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the verdict will not be overturned. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670, 672.

■ In making a sufficiency determination, all probative evidence, direct and circumstantial, is considered. Triers of fact determine not only the facts presented to them and their credibility, but any reasonable inferences from facts established either by direct or circumstantial evidence. *Watkins v. State* (1984), Ind., 468 N.E.2d 1049, 1052; *McMillian v. State* (1983), Ind., 450 N.E.2d 996, 999. It is not necessary that the court find the circumstantial evidence excludes every reasonable hypothesis of innocence. It need only be demonstrated that inferences may reasonably be drawn which support the finding of guilt. *Smith v. State* (1984), Ind., 468 N.E.2d 512, 515; *Choate v. State* (1984), Ind., 462 N.E. 2d 1037, 1047.

■ Metzler correctly argues that in order to support a conviction the State must prove that the defendant not only committed the acts constituting the crime but that he intended to do so. Intent is a mental function and, absent admission, it must be determined by courts and juries from a consideration of the defendant's conduct and the natural and usual consequences of such conduct. *State v. McGraw* (1985), Ind., 480 N.E.2d 552, 554. Because intent is a mental state, the trier of fact must usually resort to reasonable inferences based upon an examination of the surrounding circumstances to determine whether, from the person's conduct and the natural consequences that might be expected from that conduct, a showing or inference the intent to commit that conduct exists. *Montego v. State* (1987), Ind., 517 N.E.2d 74, 75; *Greene v. State* (1987), Ind., 515 N.E.2d 1376, 1380, *overruled on other grounds, Myers v. State* (1989), Ind., 532 N.E.2d 1158. For crimes of attempt, the State must prove the defendant, having the requisite intent, engaged in conduct constituting a substantial step toward commission of the crime. *Jones v. State* (1988), Ind., 523 N.E.2d 750, 752; *Neice v. State* (1981), Ind., 421 N.E.2d 1109, 1111. Metzler claims it is a matter of speculation that he committed the crimes charged because the evidence shows only that he was present at the scene.

■ The evidence, without conflict, shows he was present, alone, in the cab of the truck immediately after the incident, indicating he was the one who had driven the truck into the building. The question of whether he took a substantial step toward committing the crimes involved, is equally easy of resolution. He drove the truck at a speed of approximately forty (40) miles per hour into the building, reaching a point of eighty (80) feet beyond the front wall.

Furthermore, the evidence showed Metzler intended the consequences of his act. The judge had before him evidence that Metzler had become angered with his girlfriend, the bartender, and other patrons, to the extent that he had threatened his girlfriend that her automobile might end up inside the Pub. The evidence further showed that he went back to his apartment, got his truck and drove through the parking lot at a fairly high rate of speed directly into the Pub. Investigation showed the truck was in fifth gear which meant it was probably going thirty to forty miles per hour or more when it went through the front wall of the Pub; the truck was accelerating until it stopped and there was little, if any, use of the brakes. Metzler was found unconscious in the cab moments afterwards; when roused by firemen, one of the first things he wanted to know was how many people he had killed. Sufficient facts of probative value were presented to the trial court to support the conclusion that Metzler was guilty of the crimes with which he was charged beyond a reasonable doubt.

## II

■ Metzler pleaded not guilty by reason of insanity and claims the trial court erred by failing to find the evidence established that he was mentally impaired and did not know right from wrong at the time

the crimes were committed. Pursuant to IC 35-41-4-1 it is the defendant's burden to establish the defense of insanity by a preponderance of the evidence. Therefore, a convicted defendant who claims his insanity defense should have prevailed at trial is in the position of one appealing from a negative judgment. We will reverse only when the evidence is without conflict and leads to but one conclusion which the trier of fact did not reach. *Rogers v. State* (1987), Ind., 514 N.E.2d 1259, 1260; *Mason v. State* (1983), Ind., 451 N.E.2d 661, 663. Three medical experts and numerous lay witnesses testified about Metzler's sanity. Metzler claimed he had alcoholic blackouts, which are amnesic episodes in which a person does not subsequently recall with clarity things he did while he was intoxicated. Dr. Shelvy Keglar testified that in his opinion, considering the long pattern of heavy use of alcohol and the blackout episodes, Metzler's judgment was so impaired at the time he drove the truck into the building it was impossible for him to distinguish right from wrong. Drs. Larry Davis and Louis Nie disagreed with this conclusion. They claimed that a person experiencing blackouts, usually occurring in persons showing a long pattern of excessive alcohol use, knows what he is doing at the time he is under the influence of alcohol and has the ability to make judgments and decisions but later does not recall what his actions and decisions were. In other words, blackouts or amnesic episodes have no effect on a person's ability to reason or differentiate right from wrong actions at the time he commits them even if he is intoxicated. The effects of blackouts come later when the person is unable to recall the episodes. Both Davis and Nie testified that although a person under the influence of alcohol will have a progressively lowered ability to function and make determined judgments, it is impossible to determine to what extent that was true in Metzler's case at the time he committed his acts. It was both of their considered opinions that he was not insane to the extent he could not determine right from wrong at the time he committed these acts. Some of the lay witnesses testified they observed Metzler about the time of this incident and he was calm and seemed to know what he was doing. Others, including members of his family, stated he had demonstrated episodes of disorientation and strange behavior.

The task of weighing the evidence on the issue of insanity belongs to the trier of fact and where the evidence is conflicting, he resolves these conflicts. *Lautzenheiser v. State* (1985), Ind., 481 N.E.2d 113. Lay testimony about the accused's conduct at the time of the crime may be considered together with expert testimony when determining whether to hold a person responsible for his acts. *Rogers*, 514 N.E.2d at 1261. Although there was conflict in the evidence in the instant case, there was more than sufficient probative evidence to support the trial court's determination that Metzler was not insane at the time he committed these crimes.

### III

Finally, Metzler claims the trial court erred in requiring his murder and attempted murder sentences to run consecutively. He argues that the sentence is manifestly unreasonable and contrary to law in that the trial court did not find mitigating circumstances and did not make individualized reasons for imposing consecutive sentences.

The trial court stated its reasons for imposing consecutive sentences as follows:

THE COURT: Okay. Now, folks, we've got to go back and make a record, in terms of aggravation, for running Counts ... starting with Count 2, down through those, as to why the Court ran those ... that count consecutive. Let the record show that, number one, to impose a sentence of any less dimension would depreciate the seriousness of this offense, which is category number four under the statute. I think that was Section D that you referred to, Ms. Tolbert?

MS. TOLBERT: That's correct, Your Honor.

THE COURT: Let the record show, under Section D, the Court lists as its rea-

son for the aggravation here, the total disregard for the health and safety of the total number of people in the bar, in view that the defendant had only recently left the bar. Secondly, let the record show that the Court finds that the nature of this offense was what we would call terrorist in nature, which is rare and unknown in this country. The Court finds, in aggravation, the emotional trauma that was caused to the numerous victims and the families of those victims. In addition, the Court finds, in aggravation, the fact that a number of people who testified in this trial, victims, will probably be disabled the rest of their lives. The Court remembers specifically hearing one of the victims testify to the fact that he had not been able to consume solid foods for a period of six months. We also, in finding aggravation, the fact that nineteen people actually received some degree of injury, some more serious than others. For all of those reasons, under Section D of the statute, the Court gives as aggravation for the reason of running Count One and subsequent counts consecutive to Count 2. Have I confused anybody?

MS. TOLBERT: No, Your Honor.

THE COURT: Very good. We shall be adjourned.

*Record* at 654–657.

The trial court obviously was referring to Ind.Code § 35–38–1–7(b)(4): "Imposition of a reduced sentence or suspension of the sentence and imposition of probation would depreciate the seriousness of the crime;" and 7(d): "The criteria listed in subsections (b) and (c) do not limit the matters that the court may consider in determining the sentence." The court gives several reasons for finding that the commission of this crime had many aggravating features. All of those findings are supported by the evidence. The reasons given are sufficient to explain the court's reasons for giving the consecutive term and enable this Court to sentence to be manifestly unreasonable to the extent that no reasonable person could find the sentence appropriate for the offense and the offender. Ind.R.App.Rev. Sen. 2; *Williams v. State* (1979), 271 Ind.

408, 412, 393 N.E.2d 149, 151. *See also Hammons v. State* (1986), Ind., 493 N.E.2d 1250, 1256; *Pillow v. State* (1985), Ind., 479 N.E.2d 1301, 1304–05; *Zachary v. State* (1984), Ind., 469 N.E.2d 744, 750; *Johnson v. State* (1983), Ind., 447 N.E.2d 1072, 1075–76.

The trial court is affirmed.

SHEPARD, C.J., and GIVAN and DICKSON, JJ., concur.

DEBRULER, J., not participating.