Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 27 2014, 9:13 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**RUTH JOHNSON**
**DEBORAH MARKISOHN**
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

ROY LEE MCGRAW,          )
                          )
    Appellant-Defendant,   )
                          )
      vs.              )          No. 49A04-1312-CR-589
                          )
STATE OF INDIANA,         )
                          )
    Appellee-Plaintiff.    )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable John M.T. Chavis, II, Judge
Cause No. 49F15-1307-FD-44330

**October 27, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Following a bench trial, Roy Lee McGraw appeals his conviction for Class D felony intimidation,[1] contending that the evidence was insufficient to convict him.

We affirm.

**FACTS AND PROCEDURAL HISTORY**

Between 10:00 and 11:00 a.m. on July 6, 2013, twenty-two-year-old Mark Radford was standing on the front porch of his residence at the corner of 52nd Street and German Church Road in Indianapolis. He saw a woman walking out of the nearby Winding Ridge housing edition. Radford saw a white van, driving west on 52nd Street, pull up next to her and stop. Radford observed the van's driver, later identified as McGraw, jump out of his vehicle, grab the woman by what appeared to be the back of her shirt, and throw her to the ground. Radford ran from his porch through the intersection to assist her. Before he reached her, she got up, and at that point, Radford decided that he did not need to go any farther and intended to return home. About that same time, McGraw yelled to Radford, "Yeah – come on over here bitch, and I'll whoop your ass," and continued with, "I'll beat your ass, too." *Tr.* at 12. Radford just replied, "Yeah, okay. I'll call 911." *Id.* Radford watched McGraw followed the female back into Winding Ridge, and Radford returned home and telephoned authorities to report the incident. Police responded to the area, but did not locate McGraw or the woman and did not go to Radford's house.

About twenty to thirty minutes later, Radford was out on his porch again, and he saw McGraw driving west on 52nd Street as he had before, this time crossing through

---

[1] *See* Ind. Code § 35-45-2-1(a)(2), (b)(1)(A). We note that effective July 1, 2014 a new version of this criminal statue was enacted. Because McGraw committed his crime in 2013, we will apply the statute in effect at that time.

German Church Road and stopping in front of Radford's house. McGraw yelled, "Does somebody got something to say?" and "Come on, step out in the street, then!" *Id*. at 13-15. He also stated, "Come in the street, then, punk-ass white boy." *Id*. at 32. According to the record before us, Radford called the police a second time on July 6, and this time one or more officers from the Lawrence Police Department ("LPD") responded to Radford's home, and Radford told them that McGraw had driven past his house several times that day, challenging him to a fight and threatening him. Radford told officers that on one occasion McGraw held his hand out the window and made a "bang-bang" gesture as though pointing and shooting a handgun, although Radford did not actually see a gun. *Id*. at 38.

The next day, Radford, his three minor children, and his uncle were outside in their driveway shooting targets with a BB gun, when McGraw drove up and stopped on 52nd Street, as cars honked behind him. McGraw leaned out of the window, pointed at Radford, and yelled something, but Radford could not hear what he said. Radford did not respond to McGraw, but he called police again. They responded and took Radford to a location on or near 42nd or 46th Street, where officers had stopped McGraw in his vehicle, and Radford identified McGraw to police as the person that had been driving past his home and threatening him. The next day, July 8, 2013, the State charged McGraw with two counts of Class D felony intimidation, one stemming from acts committed on July 6 and the other related to acts committed July 7, and it charged McGraw with one count of driving while suspended as a Class A misdemeanor.

3

At the October 8, 2013 bench trial, LPD Sergeant Tonya Tilson testified that, at 10:38 a.m. on July 6, she responded to a possible domestic disturbance call at the intersection of 52nd and German Church Roads. When police arrived, however, they did not find the persons or vehicle reported to be involved, and the police vehicles went back into patrol service. Officers responded again at 12:49 p.m. to a call from Radford. When police arrived at his home, Radford told officers that the white van had driven by several times and it had stopped once, and McGraw had made verbal threats and hand gestures.[2] Specifically, Radford described to police that McGraw held his hand out the window as if holding gun and made a "bang-bang" shooting gesture. *Tr.* at 38.

LPD Officer Daniel Rhoton testified that, on July 6, 2013, he was working the second shift, 2:00 p.m. to 10:30 p.m., and as he came on duty, Sergeant Tilson told him about the disturbance runs she had made earlier in the day to the area of 52nd and German Church, and she gave him a physical description of the white Chevrolet van and its driver. At the start of his shift, Officer Rhoton made contact with Radford at Radford's home in order to get a clearer description from Radford, and thereafter, Officer Rhoton looked in the area for the suspect vehicle. He located the vehicle, and McGraw standing beside it, in the Winding Ridge housing division. Upon identifying McGraw, they learned he had a suspended driver's license. When officers asked McGraw about the earlier domestic disturbance at 52nd and German Church involving the female, he replied, "[I]t was just an argument between me and my girl." *Id*. at 50. Concerning his contact with Radford,

_____

[2] It appears that at 12:21 p.m., LPD officers separately responded to a call from someone reporting a person with a weapon, which upon investigation appears to have been Radford on his porch with a BB gun.

4

McGraw stated that people should mind their own business and not meddle in other people's affairs, further stating, "Where I come from, people who meddle get shot up and get dead." *Id*. at 51.

Sergeant Tilson worked again on July 7, and Officer Rhoton came on duty after her. Sergeant. Tilson testified that she was dispatched to Radford's home at 11:59 a.m. "on a threat report." *Id*. at 40. Radford told her he had been in his yard with this three children, and McGraw had driven by again, continuing to make gestures and comments to Radford about the day before. Later, Officer Rhoton responded to a call from Radford, where Radford reported that the van just drove past his home again. Thereafter, Officer John Nelson of LPD, who was working on July 7, initiated a traffic stop of McGraw in the white van near 46th Street and Berwood Drive for driving on a suspended license.[3] Radford was transported to that location and identified McGraw and the van, after which McGraw was arrested on charges of intimidation.

At the conclusion of the State's evidence, McGraw moved for involuntary dismissal of charges, which the trial court denied. The trial court found McGraw guilty of Count I, Class D felony intimidation related to acts that occurred on July 6, and guilty of Count III, Class A misdemeanor driving while license suspended; the trial court found McGraw not guilty of Count II, which alleged intimidation occurring on July 7. The trial court later sentenced McGraw to two years on the intimidation conviction and a concurrent term of 34 days for driving while suspended. It also suspended McGraw's driver's license for

---

[3] LPD officers had issued McGraw a warning on July 6 for driving with a suspended license. *Tr*. at 55.

ninety days. The trial court ordered that the concurrent sentences be executed on home detention through Marion County Community Corrections. McGraw now appeals his intimidation conviction.

## DISCUSSION AND DECISION

On appeal, McGraw argues that the State did not provide sufficient evidence to convict him of Class D felony intimidation. When reviewing the sufficiency of the evidence needed to support a criminal conviction, we consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence. *Newell v. State*, 7 N.E.3d 367, 369 (Ind. Ct. App. 2014), *trans. denied*. "It is the fact-finder's role, and not ours, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction." *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007). We affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference reasonably may be drawn from it to support the trial court's decision. *Id.* at 147. It is well established that circumstantial evidence will be deemed sufficient if inferences may reasonably be drawn that enable the trier of fact to find the defendant guilty beyond a reasonable doubt. *Pratt v. State,* 744 N.E.2d 434, 437 (Ind. 2001). As this was a bench trial, we presume the judge knows and will follow the applicable law. *Leggs v. State*, 966 N.E.2d 204, 208 (Ind. Ct. App. 2012).

The offense of intimidation is governed by Indiana Code section 35-45-2-1, which provides in part that "[a] person who communicates a threat to another person, with the

6

intent . . . that the other person be placed in fear of retaliation for a prior lawful act . . . commits intimidation, a Class A misdemeanor," and "the offense is a . . . Class D felony if . . . (B) the threat is to commit a forcible felony[.]" Ind. Code § 35-45-2-1(b)(1)(A). A "threat" is "an expression, by words or action, of an intention to . . . unlawfully injure the person threatened or another person, or damage property; [or] commit a crime . . . ." Ind. Code § 35-45-2-1(c). Whether a communication is a threat is an objective question for the trier of fact. *Newell*, 7 N.E.3d at 369 (citing *Ajabu v. State,* 677 N.E.2d 1035, 1041 (Ind. Ct. App. 1997), *trans. denied.*). Intent is generally determined from a consideration of the defendant's conduct and the natural and usual consequences of such conduct, and the trier of fact must usually resort to reasonable inferences based upon an examination of the surrounding circumstances. *McCaskill v. State*, 3 N.E.3d 1047, 1050 (Ind. Ct. App. 2014) (intent can be inferred from defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points); *Hendrix v. State,* 615 N.E.2d 483, 484-85 (Ind. Ct. App. 1993) (citing *Metzler v. State,* 540 N.E.2d 606, 609 (Ind. 1989)). Here, the State alleged that McGraw communicated to Radford the threat to shoot Radford and/or his children with the intent that Radford be placed in fear of retaliation for the prior lawful act of having stopped a disturbance between McGraw and a female and that the threat was to commit the forcible felony of battery. *Appellant's App.* at 25.

McGraw argues that the evidence did not establish that Radford felt threatened by the words and conduct, claiming "there was no evidence Radford was ever placed in fear by McGraw's actions." *Appellant's Br.* at 9. We disagree. At trial, the State presented evidence that, on July 6, after Radford ran from his porch to assist the female that McGraw

7

had thrown to the ground, McGraw yelled to Radford, "Yeah, come over here, bitch, and I'll whoop your ass," and continued with, "I'll beat your ass, too." *Tr.* at 12. Radford walked home and called 911. As the trial court remarked, "[I]f folks could have separated" after that first incident, the matter would have ended right then. *Id.* at 73. However, McGraw drove past Radford's home several times on July 6, including while Radford's children were outside in the yard, making comments and gestures to Radford. On one occasion that day, McGraw put his arm out of the window and made a "bang-bang" motion, as though holding a handgun and shooting. The trial court observed, "Mr. McGraw upped the ante at that point by making the gesture." *Id.* at 73. Radford testified that he felt threatened by McGraw's acts and verbal comments. *Id.* at 15, 17, 23, 33-34. McGraw's conduct could be interpreted, and indeed was interpreted by Radford, as an indication that he intended to harm Radford or his children, and accordingly it was sufficient to prove that McGraw's words and conduct were a threat.

McGraw also seeks reversal on the basis that Radford actually did not engage in a prior lawful act of stopping a domestic disturbance because the incident between McGraw and the woman "was over before [Radford] arrived." *Appellant's Br.* at 10. We reject that claim as well, finding that it is an attempt to put form over substance. The State argues, and we agree, that the State was not required to prove that Radford's attempt to intervene in the fight actually stopped the fight. *Appellee's Br.* at 4. Radford testified that McGraw drove up to the woman, jumped out of his van, and "flung her to the ground." *Tr.* at 8. Radford immediately ran over to assist her. The fact that she rose to her feet as he approached does not change the fact that Radford was attempting to assist her when

8

McGraw yelled obscenities to Radford and came back to his house thirty minutes later, to stop and challenge Radford to a fight, yelling, "Does somebody got something to say?" and "Come in the street, then, punk-ass white boy." *Id.* at 13-14, 32-33. The State presented sufficient evidence from which the trier of fact could infer that McGraw was retaliating with threats for Radford's prior lawful act of attempting to assist the female McGraw had thrown to the ground.

Lastly, McGraw asserts that the State failed to prove that McGraw threatened to commit a forcible felony, in this case, battery. The evidence presented was that McGraw threatened to "beat" and "whoop" Radford. Use of these words support a reasonable inference that McGraw intended to batter Radford, *i.e.* touch him in a rude, insolent, or angry manner. Ind. Code § 35-42-2-1. Furthermore, McGraw later in the day called him a "punk-ass white boy" and challenged him to a fight. *Id.* at 32-33. The evidence was sufficient to support the trial court's determination that McGraw intended to commit the forcible felony of battery against Radford.

Given the above facts and viewed consistently with our standard of review, the trial court could reasonably have inferred that McGraw intended to place Radford in fear of retaliation for prior lawful acts by repeatedly driving past Radford's home, pointing and yelling at him, and making a shooting gesture. McGraw's arguments on appeal are an invitation to reweigh the evidence, which we will not do. We find that the evidence is sufficient to support McGraw's conviction for intimidation.

Affirmed.

BAKER, J., and ROBB, J., concur.

9