# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 27 2018, 7:04 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Scott King
Russell W. Brown, Jr.
King, Brown & Murdaugh, LLC
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tyler Steffey,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | September 27, 2018<br><br>Court of Appeals Case No.<br>18A-CR-798<br><br>Appeal from the Lake Superior Court<br><br>The Honorable Salvador Vasquez, Judge<br><br>Trial Court Cause No.<br>45G01-1603-F1-4 |

**Pyle, Judge.**

# Statement of the Case

Tyler Steffey ("Steffey") appeals his convictions, following a jury trial, for Level 3 felony aggravated battery[1] and Level 6 felony auto theft.[2] Steffey argues that there was insufficient evidence to support both convictions. Finding that there was sufficient probative evidence and reasonable inferences for jurors to find Steffey guilty beyond a reasonable doubt, we affirm his convictions.

# Issue

Whether there was sufficient evidence to support Steffey's convictions.

# Facts

During the afternoon of February 19, 2016, a friend of Steffey, Kendra Skinner ("Skinner"), drove her car and picked Steffey up at a gas station in Hammond, Indiana. After Skinner picked up Steffey, she drove to another gas station located in Gary to purchase cigarettes. During this second stop, Steffey proposed that he and Skinner rob a marijuana dealer. Once they agreed to commit the robbery, Skinner drove to the apartment she shared with her sister, Brittany Sullivan ("Sullivan"), to obtain a gun that she had stolen a few days earlier.

---

[1] IND. CODE § 35-42-2-1.5.

[2] I.C. § 35-43-4-2.5(b)(1) (repealed, effective July 1, 2018).

[3] After retrieving the gun, Skinner and Steffey drove to a third gas station. Before Skinner went inside the gas station to buy cigarettes, Steffey leaned his seat back and told her not to tell anyone she was with him. Later, Steffey directed Skinner to drive to an alleyway behind a church at 10th Avenue and Chase Street in Gary to wait for the marijuana dealer they had planned to rob. Skinner parked her vehicle near a dumpster in the alleyway. Skinner was in the driver's seat, and Steffey was in the front passenger seat.

[4] During the approximately hour and a half they waited, Skinner never saw anyone else in the area. Indeed, she had time to clean out her vehicle and place bags of clothing in the nearby dumpster. While waiting, Steffey possessed the gun, and he showed her how it worked. He showed her how to load a clip and where the safety was. "After he showed [her] the clips and the 9 mm and he put the clip in, the last thing [Skinner] remember[ed] was waking up on the ground" in the alleyway near the dumpster. (Tr. 123). Skinner saw her vehicle being driven down the alleyway but could not see who was driving. Skinner was shot twice, once on the right side of her head and once in the chest. She crawled to a nearby house on Chase Street and asked for help. The homeowner called the police and Skinner was taken by ambulance to the hospital.

[5] As a result of being shot, Skinner suffered injuries to her left abdominal area, a broken jaw that had to be wired shut for several months, a loss of hearing in her right ear, and a loss of her sense of smell. She also suffered from severe headaches and poor short-term memory. After arriving at the hospital, Skinner was unconscious for two days. When she woke up, she was unable to open her

mouth. Using a chalkboard, she wrote down the following: "Where is my car?", "Does my sister know?", and "Tyler Steffey." (Tr. 79). Skinner wrote Steffey's name because she knew "he did this to [her]." (Tr. 79).

[6]   Skinner's sister, Sullivan, called Steffey and asked him what happened to her sister after learning she was in the hospital. Steffey responded that Skinner never picked him up. Sullivan called Steffey a second time, and he stated that Skinner had picked him up and dropped him off at his mother's home. Sullivan called Steffey a third time, and he said he had never seen Skinner.

[7]   Two months later, on April 13, 2016, Skinner's vehicle was found in an apartment complex. Inside the car, police found blood splatter on the front windshield and dashboard. The driver's side front window was shattered and there was a bullet hole in the driver's seat. A spent bullet casing was also located inside the driver's side front door. The police did not attempt to recover fingerprints because any number of people could have entered the vehicle between February and April. The police also did not perform DNA testing on any of the blood stains in the car because the information suggested that Skinner had been the only person injured.

[8]   The State charged Steffey with: Level 1 felony attempted murder; Level 3 felony aggravated battery; Level 5 felony battery with a deadly weapon; Level 5 felony battery causing serious bodily injury; Level 6 felony auto theft; and Class A misdemeanor theft. A two-day jury trial began on October 3, 2017. Skinner, Sullivan, and the police testified to the facts above. There was a dispute

regarding what side of the head Skinner was shot on. The jury returned guilty verdicts on the aggravated battery and the felony auto theft charges, and it found Steffey not guilty on the remaining charges.

[9] Thereafter, the trial court sentenced Steffey to twelve (12) years for the Level 3 felony aggravated battery conviction and two (2) years for the Level 6 felony auto theft conviction. The trial court ordered the sentences to be served consecutively in the Department of Correction for an aggregate sentence of fourteen (14) years. Steffey now appeals.

# Decision

[10] On appeal, Steffey challenges the sufficiency of the evidence for both of his convictions. Our standard of review for sufficiency of evidence claims is well settled. We do not assess the credibility of the witnesses or reweigh the evidence in determining whether the evidence is sufficient. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We consider only the probative evidence and *reasonable inferences* supporting the verdict. *Id*. (emphasis added). Reversal is appropriate only when no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id*. Thus, the evidence is not required to overcome every reasonable hypothesis of innocence and is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id*. at 147.

## 1. Aggravated Battery

[11] In order to convict Steffey of aggravated battery, the State was required to prove beyond a reasonable doubt that: (1) Steffey; (2) knowingly or intentionally; (3) inflicted injury on Skinner; (4) that created a substantial risk of death or caused serious permanent disfigurement or protracted loss of impairment of a bodily member or organ. I.C. § 35-42-2-1.5. A person engages in conduct "knowingly" if he "is aware of a high probability that he is doing so." I.C. § 35-41-2-2(b). A person engages in conduct "intentionally" if "it is his conscious objective to do so." I.C. § 35-41-2-2(a).

[12] Steffey concedes that the injuries Skinner suffered created a substantial risk of death or caused serious permanent disfigurement or protracted loss of impairment of a bodily member or organ. Instead, he first argues that the "record is devoid of any direct evidence" that he inflicted injury on Skinner.[3] (Steffey's Br. 10). Alternatively, Steffey argues that there was no evidence that he knowingly or intentionally inflicted injury on Skinner.

[13] With regard to Steffey's first argument, that the record is devoid of any direct evidence that he inflicted injury on Skinner, we note that a verdict may be sustained based upon circumstantial evidence alone if that circumstantial evidence supports a reasonable inference of guilt. *Houston v. State*, 730 N.E.2d 1247, 1248 (Ind. 2000). Our review of the record shows that there was

---

[3] Steffey also argues that the State failed to present evidence that he possessed a motive to injure Skinner. The State was only required to prove the statutory elements of the offense, which do not include motive. *See Sallee v. State*, 51 N.E.3d 130, 134 (Ind. 2016).

sufficient circumstantial evidence to support a reasonable inference that Steffey inflicted injury on Skinner. Specifically, Skinner identified Steffey as the only other occupant in her vehicle. *See Thompson v. State*, 674 N.E.2d 1307, 1311 (Ind. 1996) (a conviction may rest solely on the uncorroborated testimony of a victim). She testified that Steffey was in possession of the gun immediately before she lost consciousness. Just before she was shot, Steffey showed Skinner how to load the clip, and he showed her the safety. Skinner did not see anyone else in the alleyway during the hour and a half that she and Steffey waited in the alleyway. Steffey's argument that the record is devoid of any direct evidence that he inflicted injury on Skinner is nothing more than a request that we reweigh the evidence. This we will not do. *See Drane*, 867 N.E.2d at 146.

[14] Alternatively, Steffey argues that there was no evidence that he knowingly or intentionally inflicted injury on Skinner. Because intent is a mental function, absent an admission by the defendant, it must be determined from a consideration of the defendant's conduct and the natural and usual consequences thereof. *Metzler v. State*, 540 N.E.2d 606, 609 (Ind. 1989). The trier of fact usually must resort to "reasonable inferences based upon an examination of the surrounding circumstances to determine whether, from the person's conduct and the natural consequences that might be expected from that conduct, a showing or inference [of] the intent to commit that conduct exists." *Id*.

[15] The State presented evidence that: Skinner was seated in the driver's seat, and Steffey in the front passenger seat; Steffey was the only person with Skinner as

they waited to rob a marijuana dealer; he possessed the a gun right before Skinner lost consciousness; Skinner was shot twice, once in the head and once in the chest; Skinner testified that she was shot on the right side of her face; there was blood spatter on the front windshield and across the dashboard; there was a bullet hole in the driver's seat; and a spent bullet casing was located inside the driver's side door. Sullivan also testified that Steffey gave conflicting accounts as to whether he saw Skinner at all on the day she was shot twice. She stated that she spoke to Steffey three times and that he denied seeing Skinner twice and admitted to being with her once. The cumulative effect of the evidence supports the reasonable inference that Steffey knowingly or intentionally shot Skinner. Thus, after consideration of the circumstantial evidence and Steffey's conduct and the natural and usual consequences thereof, it was reasonable for the jury to conclude that the elements of Level 3 felony aggravated battery were proven beyond a reasonable doubt.

### 2. Auto Theft

[16] In order to convict Steffey of felony auto theft as charged, the State was required to prove beyond a reasonable doubt that: (1) Steffey; (2) knowingly; (3) exerted unauthorized control over the motor vehicle of Skinner; (4) with the intent to deprive her of its value or use. I.C. § 35-43-4-2.5(b)(1).

[17] Steffey argues that "the State did not present any evidence that [he] stole [Skinner's] vehicle." (Steffey's Br. 11). Our review of the record shows that the State presented circumstantial evidence that Steffey was the person who exerted

unauthorized control over Skinner's vehicle. Circumstantial evidence alone may support a theft conviction. *Rogers v. State*, 902 N.E.2d 871, 875 (Ind. Ct. App. 2009). The question for an appellate court reviewing the sufficiency of the evidence is whether a reasonable jury could draw inferences from circumstantial evidence that would establish the defendant's guilt. *Sidener v. State*, 55 N.E.3d 380, 385 (Ind. Ct. App. 2016).

[18] The evidence presented at trial was that Skinner, who was seated in the driver's seat, and Steffey, who was in the front passenger seat, were the only occupants in her vehicle during the time they were waiting for the marijuana dealer. The State also presented evidence that Steffey was the only person in the vicinity with Skinner. *See, e.g.*, *Kindred v. State*, 257 N.E.2d 667, 668 (Ind. 1970) ("[T]he fact that appellant was in the room alone at a time the evidence shows the cash register was opened and the fact that immediately thereafter the money was missing is sufficient upon which the trier of fact could find appellant had taken the money"). Skinner testified that she observed her vehicle being driven away after she regained consciousness on the ground. Additionally, she stated that she never gave anyone permission to drive her vehicle. The circumstantial evidence and inferences drawn therefrom support a reasonable inference that Steffey was the person who exerted unauthorized control over Skinner's vehicle. Again, our role is not to reweigh the evidence; we determine whether sufficient probative evidence and reasonable inferences support a guilty verdict beyond a reasonable doubt. *See Drane*, 867 N.E.2d at 146.

[19] Finding that the evidence was sufficient to prove Steffey committed aggravated battery and felony auto theft, we affirm his convictions.

[20] Affirmed.

Najam, J., and Crone, J., concur.