**Robert GLEAVES, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0604–CR–340.**

Court of Appeals of Indiana.

Jan. 11, 2007.

Michael R. Fisher, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Robert Gleaves appeals his conviction of Voluntary Manslaughter,[1] a class A felony, Attempted Aggravated Battery,[2] a class B felony, and Carrying a Handgun Without a License,[3] a class A misdemeanor, as well as the sentence imposed by the trial court. Gleaves presents the following restated issues for review:

1. Was the evidence sufficient to support the convictions?

2. Did the trial court err in imposing consecutive sentences?

3. Was the sentence appropriate in light of the nature of the offense and the character of the offender?

We affirm.

The facts favorable to the convictions are that on the evening of February 6, 2005, Laramie Dudley and her boyfriend, Kyle Harris, were spending the evening together in Harris's apartment in Indianapolis. Dudley had an eighteen-month-old son, whose father was her ex-boyfriend, Tony Clardy. Dudley received a telephone call from her sister in New Castle, Indiana. The sister, who was babysitting Dudley's son at the time, informed Dudley that Clardy was also on the telephone and wanted to participate with Dudley in a three-way telephone conversation. Dudley consented. Clardy told Dudley he wanted to come for his son. Dudley did not tell Clardy that his son was not there. After the phone call ended, Dudley and Harris resumed watching television and playing video games.

Sometime between 9:30 and 10 p.m., Dudley and Harris heard a knock on the door. Expecting the arrival of a friend, Harris called out "Colleen", but no one

---

1. Ind.Code Ann. § 35–42–1–3 (West, PREMISE through 2006 Second Regular Session).

2. I.C. § 35–42–2–1.5 (West, PREMISE through 2006 Second Regular Session).

3. Ind.Code Ann. § 35–47–2–1 (West, PREMISE through 2006 Second Regular Session).

answered. *Transcript* at 99. Harris walked to the door, peered through the peephole, and said, "What the fuck do these motherfuckers want?" *Id.* at 100. Harris picked up a baseball bat and opened the door. When the door opened, Dudley saw that Clardy was standing in the doorway, with a person she knew only as Robert standing behind Clardy. Clardy stepped aside, and Robert, who Dudley later identified as Gleaves, pulled a handgun from under his shirt and shot Harris once in the chest. Dudley arose from the couch and took a step toward the door as Harris retreated to the bathroom. She then looked back into the hallway and saw Gleaves standing near the top of the stairs just outside Harris's apartment. At that moment, Gleaves fired a shot at Dudley through the stair railing, but missed. Gleaves and Clardy ran downstairs, got into Clardy's car, and drove away.

Meanwhile, Dudley called 911 and reported that her ex-fiancée had just shot her boyfriend, and that her boyfriend was dying. When asked whether the shooter was still on the premises, Dudley reported that he had left in a white Caprice. By the time Indianapolis Police Department Detective Daniel Kistner arrived on the scene a few minutes later, Harris was dead. Dudley was very emotional, crying and screaming. She told Detective Kistner what had happened, explaining that she had seen a person she knew as Robert with Clardy, and Robert had the gun that killed Harris. Dudley also gave a photo of the shooter to Detective Kistner. That photo depicted Gleaves, who was later apprehended at his mother's house. He was charged with the murder of Harris, the attempted murder of Dudley, and carrying a handgun without a license.

Following a jury trial, Gleaves was found guilty as set out above. At the March 22, 2006 sentencing hearing, the trial court imposed the presumptive sentence for each of the offenses, i.e., thirty years for voluntary manslaughter, ten years for attempted aggravated battery, and one year for carrying a handgun without a license. The one-year and thirty-year sentences were imposed concurrent to each other, and consecutive to the ten-year sentence for attempted aggravated battery, for a total executed sentence of forty years.

1.

Gleaves contends the evidence was not sufficient to support his convictions. Specifically, he contends that Dudley's testimony identifying him as the shooter was incredibly dubious.

When considering a challenge to the sufficiency of evidence to support a conviction, we respect the fact-finder's exclusive province to weigh conflicting evidence and therefore neither reweigh the evidence nor judge witness credibility. *McHenry v. State,* 820 N.E.2d 124 (Ind. 2005). We consider only the probative evidence and reasonable inferences supporting the verdict, and "must affirm 'if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt.'" *Id.* at 126 (quoting *Tobar v. State,* 740 N.E.2d 109, 111–12 (Ind.2000)). The uncorroborated testimony of one witness may be sufficient by itself to sustain a conviction on appeal. *Pinkston v. State,* 821 N.E.2d 830 (Ind.Ct.App.2004), *trans. denied.* Dudley testified that Gleaves was the shooter. Gleaves, however, seeks a ruling that, by application of the principal of incredible dubiosity, Dudley's testimony is not worthy of belief. For testimony to be so inherently incredible that it is to be disregarded on this basis, "the witness must present testimony that is inherently contradictory, wholly equivocal or the re-

sult of coercion, and there must also be a complete lack of circumstantial evidence of the defendant's guilt." *Clay v. State*, 755 N.E.2d 187, 189 (Ind.2001).

The inconsistencies cited by Gleaves with respect to Dudley's testimony are: (1) in her 911 call, Dudley stated that her ex-fiancée had shot Harris; (2) Dudley testified at trial that when Harris opened the door, she saw Clardy and Gleaves standing there, yet, in the days following the incident, she told police she did not actually see Clardy's face; (3) she told police the shooter was wearing dark clothing, but testified in court that she recently recalled that the shooter might have been wearing a red shirt; (4) she told investigating detectives that she was not sure when Harris retrieved the bat, but at trial she testified unequivocally that he did so before he opened the door; (5) prior to trial, she stated that she merely stood when Harris opened the door, but at trial she claimed that immediately after she stood up, she walked forward which, according to Gleaves, "was critical to her having the perspective to see all that she claimed to see." *Appellant's Appendix* at 7.

We note first that inconsistencies in identification testimony impact only the weight of that testimony, because it is the jury's task to weigh the evidence and determine the credibility of the witnesses. *Badelle v. State*, 754 N.E.2d 510 (Ind.Ct. App.2001), *trans. denied.* As with other sufficiency matters, we will not weigh the evidence or resolve questions of credibility when determining whether the identification evidence is sufficient to sustain a conviction. *Id.* Rather, we examine the evidence and the reasonable inferences therefrom that support the verdict. *Id.*

The "discrepancies" of which Gleaves complains, viewed either individually or in the aggregate, are not so significant that they render Dudley's testimony incredibly dubious. For the most part, these inconsistencies were minor in nature, and do not warrant reversal. *See Holeton v. State*, 853 N.E.2d 539 (Ind.Ct.App.2006). Rather, they "were factual issues for the jury to resolve" in deciding the weight and credibility to assign Dudley's testimony. *Miller v. State*, 770 N.E.2d 763, 775 (Ind. 2002). In the end, the jury obviously believed Dudley's claim that it was Gleaves, not Clardy, who shot Harris, and that it was Gleaves who fired a shot at her. Dudley's testimony, although not perfectly internally consistent, was not fatally inconsistent and thus was sufficient to support the jury's determination that Gleaves was the shooter.

## 2.

Gleaves contends the trial court erred in imposing consecutive sentences. Gleaves claims the court erred in doing so because it found the aggravators and mitigators to be in equipoise.

Our Supreme Court has explained the relationship between consecutive sentences and the balancing of mitigating and aggravating circumstances as follows:

> In order to impose consecutive sentences, the trial court must find at least one aggravating circumstance. The same aggravating circumstance may be used to both enhance a sentence and justify consecutive terms. Here, however, because the trial court found the aggravating and mitigating circumstances to be in balance, there is no basis on which to impose consecutive terms. Accordingly, this case is remanded to the trial court with direction to impose concurrent sentences on all counts.

*Marcum v. State*, 725 N.E.2d 852, 864 (Ind.2000) (internal citations omitted). This court has consistently interpreted

Marcum and its progeny to require that in order to impose consecutive sentences, the trial court must find *both* at least one aggravating circumstance, and that the aggravators outweigh the mitigators. *See, e.g., White v. State*, 847 N.E.2d 1043, 1046 (Ind.Ct.App.2006). Here, the trial court's sentencing statement clearly met the first criterion (i.e., a valid aggravator), but Gleaves claims it did not meet the second (i.e., aggravators outweigh mitigators). We interpret the court's comments differently.

■ When pronouncing sentence, the trial court identified Gleaves's criminal history as an aggravator, but found it to be of "middle or medium weight." *Transcript* at 542. The court identified two mitigators, Gleaves's young age and his remorse. The court found the aggravators and mitigators to be "very equal in their weight." *Id.* at 544. Thus, the court imposed the presumptive sentence for each conviction.

At that point, the court turned its attention to the issue of consecutive sentences, making the following comments and observations:

> Now, here the Court also needs to consider concurrent and consecutive sentencing. And I think, frankly, the facts of this case make that decision very easy. And that is what I referred to earlier, that the circumstances of your crime were that you shot Kyle Harris. He retreated. And you then shot at Laramie Dudley.
>
> And so not only are those two very separate and distinct acts at separate times, but, also, we have two different victims here. And because of that, I believe that Count I and Count II should be consecutive to each other.

*Id.* at 544–45. We interpret the foregoing comments to constitute the finding of an additional aggravating circumstance, i.e., multiple victims, over and above the ones already identified by the trial court in its previous comments. As the aggravators and mitigators were found to be in equipoise without it, it is an exercise in simple logic to conclude that the aggravating circumstances preponderate with the addition of this factor.

Our Supreme Court has indicated multiple victims is an aggravating circumstance that supports the imposition of consecutive sentences, noting that doing so "seems necessary to vindicate the fact that these were separate harms and separate acts against more than one person." *Serino v. State*, 798 N.E.2d 852, 857 (Ind.2003). *See also Estes v. State*, 827 N.E.2d 27, 29 (Ind.2005) (defendant "committed the offenses against two victims, so at least one consecutive sentence is appropriate"). The multiple-victim aggravator tipped the balance such that the aggravators outweighed the mitigators, and also justified the imposition of consecutive sentences.

3.

Gleaves contends the forty-year sentence was inappropriate in light of the nature of the offense and the character of the offender.

■ Pursuant to Indiana Appellate Rule 7(B), we may revise a sentence authorized by statute if, after considering the trial court's decision, we find that the sentence imposed is inappropriate in light of the nature of the offense and the character of the offender. With respect to the nature of the offense, the presumptive sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed.[4] *Weiss v. State*, 848 N.E.2d 1070 (Ind.2006).

**4.** After the date Gleaves committed theses of-     fenses, the Legislature amended Indiana's

■ With respect to the nature of the offense, the Legislature has selected the presumptive sentence (now the advisory sentence) as an appropriate sentence for the crimes committed. *Childress v. State,* 848 N.E.2d 1073 (Ind.2006). Here, the trial court imposed the presumptive sentence for each of Gleaves's convictions, and ordered that they should be served consecutively. Gleaves committed separate offenses against two separate victims under circumstances that permitted time for reflection without provocation between the shooting of Harris and the attempted shooting of Dudley. As explained above, the multiple-victim aspect justifies consecutive sentences. As to the character of the offender, although he was only seventeen years old at the time of sentencing, Gleaves already had a criminal history that included four true findings of juvenile delinquency for intimidation, resisting law enforcement, disorderly conduct, and battery. Also, Gleaves violated probation and suspended commitments in at least some of those instances. In light of the nature of the offense and what it reveals of Gleaves's character, the forty-year executed sentence is appropriate.

Judgment affirmed.

KIRSCH, C.J., and RILEY, J., concur.

sentencing statutes to provide for "advisory sentences" rather than "presumptive sentences." *See* Pub.L. No. 71–2005, § 5 (codified at Ind.Code Ann. § 35–50–2–1.3 (West, PREMISE through 2006 Second Regular Session)). Under the new scheme, a trial court may impose any sentence that is authorized by statute and permissible under the Indiana Constitution "regardless of the presence or absence of aggravating circumstances or mitigating circumstances." Pub.L. No. 71–2005, § 3 (codified at Ind.Code Ann. § 35–38–1–7.1(d) (West, PREMISE through 2006 Second Regular Session)). The new scheme does not apply, however, to cases in which the offense was committed before the effective date of the amended statute, i.e., April 25, 2005. *Creekmore v. State,* 853 N.E.2d 523 (Ind.Ct.App. 2006), *trans. filed; but see White v. State,* 849 N.E.2d 735 (Ind.Ct.App.2006), *trans. denied.*