**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**MICHAEL FRISCHKORN**
Fortville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana



FILED

Nov 09 2012, 9:22 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TRAVIS REAGLE | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 29A05-1206-CR-332 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable William J. Hughes, Judge
Cause No. 29D03-1106-FA-8307

**November 9, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

STATEMENT OF THE CASE

Travis Reagle ("Reagle") appeals his sentence following a plea of guilty to class A felony rape[1] and class B felony burglary.[2]

We affirm.

ISSUE[3]

Whether the trial court abused its discretion in sentencing Reagle.

FACTS

During the early morning of May 31, 2011, a masked Reagle entered P.S.'s second-floor Noblesville apartment through a sliding glass door. P.S. awoke when Reagle held a box cutter to her throat and put his hand over her mouth. Reagle "threatened to cut her throat" and did inflict a small cut on P.S.'s neck. (Tr. 17). Reagle bound P.S. with duct tape and demanded her bank cards. After Reagle took P.S.'s bank cards and some cash from P.S.'s purse, he tied P.S. to a closet rod. He then left P.S. in the closet.

Shortly thereafter, Reagle returned. He cut P.S. down from the closet rod and moved her to the bed. Telling her "that he should have some fun with her," Reagle cut off P.S.'s underwear, penetrated her vagina with his fingers, and then placed his penis in her vagina. (Tr. 17). Reagle also attempted to penetrate P.S.'s anus with his penis several times. Before leaving the apartment, Reagle told P.S. that he was going to go to Chase Bank and then would telephone the police for her.

---

[1] Ind. Code § 35-42-4-1(b)(2).
[2] I.C. § 35-43-2-1(1)(B)(i).
[3] We note that the State addresses the appropriateness of Reagle's sentence pursuant to Indiana Appellate Rule 7(B). Because Reagle does not assert that his sentence is inappropriate, we shall not address the State's argument.
[4] The DVD also contains additional recordings of at least two other women. The recordings were made in public venues, and the women appear to be unaware of being videotaped. At times, the person making the recording focuses on the buttocks of the women. In two of the recordings, children are accompanying the

After Reagle left, P.S. telephoned 911 and described Reagle's clothing, including his lack of shoes. Approximately fifteen minutes later, a deputy with the Hamilton County Sheriff's Department found Reagle at a Noblesville-area Chase Bank and requested his identification. As Reagle handed the officer his identification, he dropped P.S.'s bank cards. The officer placed Reagle under arrest and read him his *Miranda* rights. Reagle subsequently admitted that he had "'raped [P.S.],'" and when asked to explain, he stated that he had "'forced vaginal intercourse upon her.'" (Tr. 17).

On June 1, 2011, the State charged Reagle with Count 1, class A felony rape; Count 2, class A felony attempted criminal deviate conduct; Count 3, class B felony burglary; Count 4, class B felony burglary; Count 5, class B felony robbery; Count 6, class B felony criminal confinement; and Count 7, class D felony theft.

On December 22, 2011, the State and Reagle entered into a plea agreement, whereupon Reagle agreed to plead guilty to Counts 1 and 3, in exchange for which the State would move to dismiss the remaining charges. The plea agreement provided that sentencing would be "left to the Court[']s discretion." (App. 49). The trial court held a guilty plea hearing, took the plea agreement under advisement, and ordered a presentence investigation report ("PSI").

The trial court held a sentencing hearing on March 2, 2012. According to the PSI, Reagle had no prior criminal history. The PSI contained Reagle's written statement, in which he admitted to having surreptitiously recorded P.S. prior to committing the offenses against her. The trial court admitted into evidence a DVD, which shows P.S. being recorded through her apartment window.[4]

---

[3] We note that the State addresses the appropriateness of Reagle's sentence pursuant to Indiana Appellate Rule 7(B). Because Reagle does not assert that his sentence is inappropriate, we shall not address the State's argument.

[4] The DVD also contains additional recordings of at least two other women. The recordings were made in public venues, and the women appear to be unaware of being videotaped. At times, the person making the

After the State and Reagle presented aggravating and mitigating circumstances, respectively, the trial court stated:

> [T]his crime is bad. It is bad. All rapes with a deadly weapon are bad. . . . All rapes with a deadly weapon are presumed to have an advisory sentence of 30 years. I can go up from that for aggravating factors. . . . I can use the . . . facts and circumstances of the crime here were more than necessary to meet the crime of rape with a deadly weapon. [A]pparently there were cuts and bruises that are now healed. Therefore, more was done in this case than needed to be done. There was an injury of some sort beyond the rape. [T]he Court considers [that] an aggravator.
>
> The Court can also consider the fact that you committed more than one crime at the same time as an aggravator. You committed rape. You committed burglary for rape. You're not charged with that. You also committed burglary for theft. So you committed a burglary with a theft and you committed a rape, multiple crimes. Separate and distinct acts, no common elements. *That means these can be served consecutively to each other if I find that's appropriate*.

(Tr. 94-95) (emphasis added). The trial court next considered Reagle's lack of criminal history, guilty plea and cooperation with law enforcement as mitigating circumstances. The trial court continued, stating:

> Now, I believe that you need a serious period of incarceration, even though I do believe that this generally is a case with lots of mitigators. I don't really find that mitigators outweigh the aggravators and I don't really find that aggravators outweigh the mitigators. I start where we started to begin with. This is an advisory sentence. That's what the legislature has told us we should do.
>
> The issue[] for this Court [is] whether that's going to be consecutive or concurrent . . . .

(Tr. 98-99). The trial court then sentenced Reagle to the advisory sentence of thirty (30) years, with ten (10) years suspended to probation, on Count 1, and the advisory sentence of ten (10) years on Count 2, to be served in the Department of Correction. The trial court ordered that the sentences be served consecutively. Subsequently, the trial court issued a written sentencing order, finding that

recording focuses on the buttocks of the women. In two of the recordings, children are accompanying the subject of the recording.

"the aggravating factors and mitigating factors are essentially balanced" and imposed consecutive sentences. (App. 47).

On March 21, 2012, Reagle filed a motion to correct error, arguing that the trial court improperly imposed consecutive sentences. The trial court denied the motion on May 25, 2012.

DECISION

Reagle asserts that the trial court abused its discretion in imposing consecutive sentences because the trial court found the aggravating and mitigating circumstances to be equal.[5]

The decision to impose consecutive sentences lies within the discretion of the trial court. *Gilliam v. State*, 901 N.E.2d 72, 74 (Ind. Ct. App. 2009). Indiana Code § 35-50-1-2 permits trial courts to determine whether terms of imprisonment shall be served concurrently or consecutively by considering aggravating and mitigating circumstances. "[I]n order to impose consecutive sentences, the trial court must find *both* at least one aggravating circumstance, and that the aggravators outweigh the mitigators." *Gleaves v. State*, 859 N.E.2d 766, 771 (Ind. Ct. App. 2007). "[I]t is permissible for a trial court to consider aggravators and mitigators in determining the sentence for each underlying offense and then to independently consider aggravators and mitigators in determining whether to impose concurrent or consecutive sentences." *Frentz v. State*, 875 N.E.2d 453, 472 (Ind. Ct. App. 2007), *trans. denied*. Furthermore, the imposition of advisory sentences on

---

[5] We note that the plea agreement provides that Reagle, by entering into the plea agreement, "waives his right to appeal any discretionary portion of the sentence entered pursuant to and in accordance with this plea agreement and further acknowledges and affirms that this waiver is knowing and made voluntarily." (App. 51). During the guilty plea hearing and prior to accepting the plea agreement, however, the trial court advised Reagle that he would "still have a right to appeal [his] sentence by direct appeal . . . ." (Tr. 9). Where, as here, a defendant is advised that he has the right to appeal his sentence before receiving the benefit of his plea agreement, the defendant does not waive his right to appeal the sentence. *See Holloway v. State*, 950 N.E.2d 803, 805-06 (Ind. Ct. App. 2011).

the underlying offenses "does not preclude those sentences from being imposed as consecutive sentences." *Id*.

Contrary to Reagle's assertion, we do not interpret the trial court's oral statement as "unambiguously" finding that the aggravators and mitigators balance so as to render the consecutive sentences improper.[6] *See* Reagle's Br. at 5. Rather, it is clear from the transcript of the sentencing hearing that the trial court found the nature and circumstances of the offense to be an aggravating circumstance in equipoise with the mitigating circumstances, thereby supporting advisory sentences on both counts. It is also clear from the trial court's explanation at the sentencing hearing that it found the commission of multiple crimes to be an aggravating circumstance, thereby justifying the imposition of consecutive sentences.

Under the facts of this case, and as explained in *Frentz*, multiple advisory sentences can be imposed consecutively to one another. "To conclude otherwise would be to give a defendant a 'free pass' for committing multiple crimes . . . ." 875 N.E.2d at 472. We find no error here.

Affirmed.

FRIEDLANDER, J., and BROWN, J., concur

---

[6] We acknowledge that the trial court's written statement reiterates the aggravating and mitigating circumstances and then states that the circumstances "are essentially balanced." (App. 47). When a conflict exists between the trial court's oral and written sentencing statements, we have the option of crediting the statement that more accurately pronounces the trial court's findings. *McElroy v. State*, 865 N.E.2d 584, 589 (Ind. 2007). Having done so, we believe that the trial court's more detailed oral statement more accurately pronounces the trial court's findings and intent.

6