**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MICHELLE F. KRAUS**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WILLIE DREW, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1212-CR-523 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Frances C. Gull, Judge
Cause No. 02D06-1202-FC-62

**August 14, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Willie Drew appeals his convictions for battery as a class C felony and domestic battery as a class D felony. Drew raises one issue, which we restate as whether the evidence is sufficient to sustain his convictions. We affirm.

FACTS AND PROCEDURAL HISTORY

In November 2011, Joyce Carwile and her daughter, P.C., who was eleven years old, lived in a house in Fort Wayne, Indiana. Carwile had a relationship with Drew, and at some point Drew and his son, W.D., who was also eleven years old, moved in and resided with Carwile in her house.

On Thanksgiving Day, November 24, 2011, Carwile was preparing Thanksgiving dinner in the kitchen, which included a baked ham, ribs, and chicken gumbo, while P.C. was watching television in her bedroom and Drew was in the living room. At some point, Carwile observed W.D. "in [her] bedroom taking money" from a jug she kept in her closet, and, when Carwile brought it to Drew's attention, he "blew it off like it was nothing." Transcript at 38. Carwile attempted to ask W.D. why he was in her bedroom, and W.D. would not answer her. Drew then told Carwile to leave W.D. alone and that W.D. did not do anything wrong, and Carwile told W.D. to stay out of her bedroom. Drew went into Carwile's bedroom and called W.D. into the bedroom, and Carwile said that she had told W.D. to stay out of her bedroom. Drew was insistent that he was going to talk to W.D. in the bedroom and told Carwile "to get out" of the bedroom. Id. at 41. Carwile refused to leave, and Drew approached her and shoved her, causing her to strike her right eye on the window sill, slicing her right eyebrow open. Carwile saw that she was bleeding, and Drew went into the living room.

2

Carwile followed Drew and told him that he had to leave and that, if he did not, she would call 911. Drew refused to leave, and Carwile, who could not find her phone, started to walk to her neighbor's house to use the phone. Drew "kept calling [Carwile] back" saying "please let[']s talk," and Carwile returned to the house. Id. at 43.

The argument between Drew and Carwile "really got escalated as far as verbally" and "got really loud," and Carwile closed the door to P.C.'s bedroom. Id. at 44. Carwile repeatedly told Drew that he needed to leave the house, but Drew would not leave. At some point, Carwile discovered her cell phone under Drew's pillow in the bedroom, and Drew took the phone away from her. Carwile asked Drew to leave again. Drew stated he "hadn't eaten and was gonna eat," and Carwile told Drew that he could not eat there. Id. at 45.

Drew grabbed a plate and told W.D. to come into the kitchen because they were going to eat. Carwile took the plate and told Drew that he was not eating in her house and that he needed to leave. Drew picked up the ham, which was in a roasting bag, stated "well how do you like this," and "shoved it into [Carwile's] face." Id. at 46-47. Drew then pushed Carwile backward and "started pounding" on her. Id. at 47. Drew took the chicken gumbo, which was boiling hot, and threw it on Carwile, causing pain and severe burns on her left arm and side. He took the pans in which the ham and the ribs had been cooked and beat Carwile with them. Carwile was on the floor, and Drew "was over the top of [her] and . . . was pounding [her] profusely and repeatedly over and over again." Id. at 48. Carwile then "blacked out" and lost consciousness. Id. at 49.

3

When Carwile regained consciousness, she was on the floor and it was dark outside.[1] Carwile tried to stand up, but slipped and fell because of the blood and food that was on the floor. Carwile crawled out of the blood and food, stood up, and went to check on P.C., who was in her bedroom. Carwile noticed there "was blood [and] food everywhere" and that there was food on the ceilings, walls, and floor. Id. at 53. In excruciating pain, Carwile went to the bathroom and noticed that two of her teeth had been knocked out and that other teeth were loose, that her eyes were black and blue, that her right eye was closed tight, and that her neck was black and blue. She called 911 and was taken to the hospital by ambulance.

Carwile suffered multiple bruises and cuts, a second degree burn with blistering on her left arm, a fractured jaw bone, a large bruise on the right side of her head, and other extensive bruising and swelling. She also suffered a severe laceration on the back of her head and two puncture wounds in her forehead which required treatment. The emergency room physician who treated Carwile ordered morphine to address her pain. Carwile's burn injuries were consistent with hot food being thrown on her, and her other injuries were consistent with trauma and assault and being hit with objects or fists.

On February 20, 2012, the State charged Drew with Count I, battery as a class C felony;[2] and Count II, domestic battery as a class D felony.[3] On March 30, 2012, the

---

[1] Carwile testified that it "was daylight more or less when he was beating on me and when I woke up it was dark out." Transcript at 49.

[2] Count I alleged that Drew "did knowingly or intentionally touch another person to wit: Joyce Carwile in a rude, insolent, or angry manner, said act resulting in serious bodily injury to Joyce Carwile, to wit: loss of consciousness and/or extreme pain . . . ." Appellant's Appendix at 12.

[3] Count II alleged that Drew "did knowingly or intentionally touch Joyce Carwile, who is or was living as if a spouse of [Drew], in a rude, insolent or angry manner resulting in bodily injury to wit:

4

State alleged that Drew was an habitual offender. A jury trial was held on October 30 and 31, 2012, at which the court admitted as exhibits photographs of Carwile and her various injuries, the various rooms of her house, the food that Drew threw on her, and the pans which Drew used to beat her. The jury heard testimony from Carwile, the emergency room physician and other medical personnel who provided care for Carwile, and a child who lived next door to Carwile and observed part of the incident in Carwile's house. Carwile testified that Drew was the person who attacked and beat her on November 24, 2011. The child who lived next door testified that he heard banging noises coming from Carwile's house, that he "saw somebody bangin' somethin on the ground," that he "saw the top half of his body," and that the person was Drew. Id. at 126-127. On cross-examination, when asked if it was Drew he was able to see, the child responded: "I don't know if it was somebody else that related to him." Id. at 133. The jury found Drew guilty as charged on Counts I and II and that he was an habitual offender. The court found Drew's juvenile and adult criminal history, which included sixteen misdemeanor and six felony convictions as an adult, the fact that he has been on parole and received the benefit of alcohol counseling and drug treatment, and the nature of the crime to be aggravating circumstances. The court sentenced Drew to eight years for his conviction under Count I, which was enhanced by twelve years due to the habitual offender adjudication, and to three years for his conviction under Count II, to be served

physical pain and/or visible injury in the physical presence of a child less than sixteen years of age, knowing that the child was present and might be able to see or hear the offense . . . ." Appellant's Appendix at 13.

5

consecutive to the sentence under Count I, for an aggregate sentence of twenty-three years.[4]

DISCUSSION

The issue is whether the evidence is sufficient to sustain Drew's convictions for battery as a class C felony and domestic battery as a class D felony. When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. Bailey v. State, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." Id. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. Id. It is well established that "circumstantial evidence will be deemed sufficient if inferences may reasonably be drawn that enable the trier of fact to find the defendant guilty beyond a reasonable doubt." Pratt v. State, 744 N.E.2d 434, 437 (Ind. 2001).

A.     Battery

The offense of battery is governed by Ind. Code § 35-42-2-2, which provides in part that "[a] person who knowingly or intentionally touches another person in a rude,

---

[4] Drew does not raise the possible issues that his convictions violate double jeopardy or the continuing crime doctrine. In this regard, we observe that, during closing arguments, the prosecutor argued that the evidence showed that P.C. and W.D. may have been able to see or hear the initially battery in Carwile's bedroom, and that Carwile suffered serious bodily injury as a result of the battery which occurred in the kitchen. In addition, at the request of Drew's counsel, the court instructed the jury that "as you deliberate [] in the jury room, you must agree amongst yourselves unanimously [] what acts you're attributing to which charge. So which acts the defendant is charged with . . . relate to which charge whether it's the D Felony charge or the C Felony charge." Transcript at 292. At sentencing, the trial court found that Count II was a separate and distinct act from Count I.

6

insolent, or angry manner commits battery, a Class B misdemeanor" and that "[h]owever, the offense is . . . a Class C felony if it results in serious bodily injury to any other person or if it is committed by means of a deadly weapon." A person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so. Ind. Code § 35-41-2-2(a). A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so. Ind. Code § 35-41-2-2(b). To convict Drew of battery as a class C felony, the State needed to prove that he knowingly or intentionally touched Carwile in a rude, insolent, or angry manner which resulted in serious bodily injury to her.

At the time of the offense, Ind. Code 35-41-1-25 provided:

"Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes:

> (1) serious permanent disfigurement;
>
> (2) unconsciousness;
>
> (3) extreme pain;
>
> (4) permanent or protracted loss or impairment of the function of a bodily member or organ; or
>
> (5) loss of a fetus.

(Currently codified at Ind. Code § 35-31.5-2-292 (eff. Jul. 1, 2012)).

Drew acknowledges that Carwile sustained serious injuries but contends that "[w]hat is at question is who inflicted the injuries and how that occurred." Appellant's Brief at 7. Drew asserts that Carwile testified that she crawled across the bed while she was bleeding and that there "was no physical evidence admitted to corroborate this story and the lack of evidence raises serious doubts about the truthfulness of the story." Id.

7

Drew argues that an investigating officer did not recall seeing any blood on the bed and that, had he seen blood on the bedroom wall or window sill, it would have been important to document that finding. Drew further argues that there was no substantial evidence presented that pots and pans were used to inflict the injuries. Drew also argues that the child who lived next door to Carwile stated on direct examination that Drew was in Carwile's house on the day of the offense but then on cross-examination stated he was not sure who he observed.

The State maintains that ample evidence supports Drew's conviction for class C felony battery, that Drew pushed Carwile backward, began "pounding" on her, threw a pot of boiling chicken gumbo on her, and then used two pans to beat her. Appellee's Brief at 8. The State argues that Carwile suffered excruciating pain and severe burns and that she lost consciousness and remained unconscious for a significant period of time. The State asserts that Drew "attacks the credibility of the witnesses and what he perceives as gaps in the evidence" and that his arguments are merely an invitation for this court to reweigh the evidence and assess the credibility of the witnesses. Id. at 9.

We note that identity may be established entirely by circumstantial evidence and the logical inferences drawn therefrom. Bustamante v. State, 557 N.E.2d 1313, 1317 (Ind. 1990). Inconsistencies in identification testimony impact only the weight of that testimony, because it is the jury's task to weigh the evidence and determine the credibility of the witnesses. Gleaves v. State, 859 N.E.2d 766, 770 (Ind. Ct. App. 2007). As with other sufficiency matters, we will not weigh the evidence or resolve questions of credibility when determining whether the identification evidence is sufficient to sustain a

8

conviction.  Id.  Rather, we examine the evidence and the reasonable inferences therefrom that support the verdict.  Id.

The evidence most favorable to Drew's conviction reveals that he was the person who severely beat Carwile, rendering her unconscious and resulting in her extreme pain. The record reveals that Carwile testified that Drew was the person who shoved her in the bedroom and later attacked her in the kitchen, throwing hot food on her and beating her on the floor.  Testimony and evidence was presented of Carwile's injuries and that the injuries and the evidence found at Carwile's house were consistent with her testimony regarding the incident.  Carwile testified that Drew was the person who attacked and beat her on November 24, 2011.

To the extent Drew argues there is a conflict between the testimony of the child who lived next door on direct examination as to his identity as the person who committed the battery against Carwile, and the child's testimony on cross-examination or between the child's testimony and Carwile's testimony that Drew was the person who beat her, we note that it is the jury's task to weigh the evidence and determine the credibility of the witnesses and that inconsistencies in identification testimony impact the weight of the testimony.  See Gleaves, 859 N.E.2d at 770.  In addition, to the extent Drew argues that no substantive evidence shows that the pans were used to inflict the injuries, we note that battery is a class C felony under Ind. Code § 35-42-2-2 if it results "in serious bodily injury to any other person *or* if it is committed by means of a deadly weapon" (emphasis added).  We also note that "serious bodily injury" means bodily injury that causes, among other things, unconsciousness or extreme pain and that the State alleged "in the charging information that Drew committed battery as class C felony which resulted in serious

9

bodily injury to [] Carwile, to wit: loss of consciousness and/or extreme pain . . . ." Appellant's Appendix at 12. Thus, the State was required to show that the battery committed by Drew resulted in the serious bodily injury of Carwile and not that Drew committed the battery by means of a deadly weapon. Carwile testified that she "blacked out" and experienced a loss of consciousness and excruciating pain, and the emergency room physician who treated Carwile indicated that she suffered a second degree burn with blistering on her left arm, which is painful, and a host of other injuries, including a fractured jaw and extensive bruising and abrasions, and that he ordered morphine for her pain. Transcript at 49.

The jury was able to consider the evidence and testimony presented by the State regarding Drew's involvement in beating Carwile, the extent and severity of Carwile's injuries, and all of the evidence related to these issues. Based upon our review of the evidence as set forth in the record and discussed above, we conclude that sufficient evidence exists from which the jury could find Drew guilty beyond a reasonable doubt of battery as a class C felony. See Wilder v. State, 716 N.E.2d 403, 405 (Ind. 1999) (noting that it is the duty of the fact-finder to assess the credibility of witness testimony and finding that the State presented evidence of the defendant's identity as the perpetrator involved in the offense).

B.    Domestic Battery

The offense of domestic battery is governed by Ind. Code § 35-42-2-1.3, which at the time of the offense provided:

    (a)    A person who knowingly or intentionally touches an individual who:

* * * * *

10

(2)  is or was living as if a spouse of the other person as provided in subsection (c);[5] . . .

in a rude, insolent, or angry manner that results in bodily injury to the person described in subdivision (1), (2), or (3) commits domestic battery, a Class A misdemeanor.

(b)  However, the offense under subsection (a) is a Class D felony if the person who committed the offense:

* * * * *

(2)  committed the offense in the physical presence of a child less than sixteen (16) years of age, knowing that the child was present and might be able to see or hear the offense.

(2006) (Subsequently amended by Pub. L. No. 6-2012, § 225 (eff. Feb. 22, 2012)).  To convict Drew of domestic battery as a class D felony, the State needed to prove that he knowingly or intentionally touched Carwile, who was living as if a spouse of his, in a rude, insolent, or angry manner which resulted in bodily injury in the physical presence

---

[5] At the time of the offense, Ind. Code § 35-42-2-1.3(c) provided:

In considering whether a person is or was living as a spouse of another individual in subsection (a)(2), the court shall review the following:

(1)  the duration of the relationship;

(2)  the frequency of contact;

(3)  the financial interdependence;

(4)  whether the two (2) individuals are raising children together;

(5)  whether the two (2) individuals have engaged in tasks directed toward maintaining a common household; and

(6)  other factors the court considers relevant.

(2006) (subsequently amended by Pub. L. No. 6-2012, § 225 (eff. Feb. 22, 2012)).

of a child less than sixteen years of age, knowing that the child was present and might be able to see or hear the offense.

Drew asserts that the evidence is not sufficient to show that he committed domestic battery in the presence of a child less than sixteen years of age. He argues that Carwile's daughter, P.C., was in her room watching television when the first altercation took place, that there was no testimony about whether P.C. could hear the altercation, and that Carwile closed the door to P.C.'s bedroom after the first altercation. Drew also argues that, while W.D. was present in the house, Carwile did not testify about where he was during any of the altercations. The State argues that Drew called W.D. to the bedroom, told Carwile to leave, and then, when she refused, shoved Carwile into the window, and that the jury could reasonably infer that W.D. was still in the bedroom when Drew pushed Carwile, or that he was near enough that he was able to hear the crime. The State further argues that, at the time of the initial battery in Carwile's bedroom, P.C. was in an adjoining bedroom with the door open and that Carwile testified that, even if P.C. was in her bedroom with the door closed, she would still be able to hear a loud argument or altercation in the house.

In Manuel v. State, this court concluded that "the critical question in determining whether a child is 'present' for purposes of the statute is whether a reasonable person would conclude that the child might see or hear the offense; not whether the child is in the same room as where the offense is taking place." 971 N.E.2d 1262, 1270 (Ind. Ct. App. 2012) (citing Boyd v. State, 889 N.E.2d 321, 325 (Ind. Ct. App. 2008) (holding that I.C. § 35-42-2-1.3(b)(2) does not require that a child actually sense the battery but that it is sufficient that the child might see or hear the battery), trans. denied). In True v. State,

this court found that "presence" for purposes of Ind. Code § 35-42-2-1.3(b)(2) is "defined as knowingly being within either the possible sight or hearing of a child." 954 N.E.2d 1105, 1111 (Ind. Ct. App. 2011).

The record reveals that P.C. was in her bedroom watching television and that the door was open when Drew went into Carwile's bedroom, called W.D. to come to him, and told Carwile to leave. Carwile refused to leave the bedroom, and Drew shoved her, causing her to strike her right eye on the window sill. Carwile testified that her house was "a ranch type [] home" and, when asked whether, even with the door to P.C.'s bedroom closed, P.C. would be able to hear a loud altercation, Carwile responded affirmatively. Transcript at 65. Also, W.D. was confronted by Carwile in the living room, was called into Carwile's bedroom by Drew prior to Drew shoving Carwile, and was in the house during the time Drew struck and beat Carwile in the kitchen. A reasonable jury could infer, based upon the evidence, that either W.D. or P.C. might see or hear the offense. See Manuel, 971 N.E.2d at 1270 (concluding that the State produced sufficient evidence that the defendant committed domestic battery as a Class D felony in the presence of children where the children were in their bedroom and supposedly asleep, much of the parents' argument occurred in the hallway outside of their room, and the defendant was aware that the children might hear him). Therefore, we conclude that the evidence was sufficient to prove beyond a reasonable doubt that Drew committed domestic battery as a class D felony.

## CONCLUSION

For the foregoing reasons, we affirm Drew's convictions for battery as a class C felony and domestic battery as a class D felony.

13

Affirmed.

NAJAM, J., and MATHIAS, J., concur.