## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 21 2015, 6:51 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

David T.A. Mattingly
Mattingly Legal, LLC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Andre Lavon Brown, aka Andre Brown, Jr., | December 21, 2015 |
| *Appellant-Defendant*, | Court of Appeals Case No. 79A02-1504-CR-251 |
| v. | Appeal from the Tippecanoe Superior Court |
| State of Indiana, | The Honorable Randy J. Williams, Judge |
| *Appellee-Plaintiff*. | Trial Court Cause No. 79D01-1408-F3-1 |

**Brown, Judge.**

[1] Andre Lavon Brown, aka, Andre Brown, Jr., appeals his conviction and sentence for robbery as a level 3 felony. Brown raises two issues which we revise and restate as:

I. Whether the evidence is sufficient to sustain his conviction for robbery as a level 3 felony; and

II. Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

## *Facts and Procedural History*

[2] In August 2014, Brown, Charles Jenkins, and Tyler Chandler stayed with Iesha Johnson in her apartment at 2314 Yeager Road. The men seemed to stop talking or changed the subject whenever Johnson entered the room, and she thought that they probably did so because they were talking about her. Johnson observed the men carrying a bag with a string that they had with them everywhere.

[3] On August 5, 2014, Chandler and Brown went to a gun store and asked Robert Allen Robbins, the owner, if he would be interested in buying a firearm. Chandler and Brown left and returned with Jenkins. Chandler removed a twenty-two caliber Ruger "single six" revolver with a twelve-inch barrel from a bag. Transcript at 97. Robbins recognized the gun as being very unique, but was not interested because there were several deep indentations on the serial numbers. Chandler left the store, and Brown then took the gun and left the store.

[4] On August 8, 2014, between 2:00 and 3:00 a.m., Chandler entered a Circle K in West Lafayette and asked Ellen Campbell, a cashier, for a fifty dollar bill in exchange for two twenty dollar bills and a ten dollar bill. Shortly after 3:00 a.m., Campbell was stacking cigarettes, turned around, and saw a short man wearing a mask holding an old revolver with a long barrel, and a taller man wearing a mask, white Nike shoes with black trim, and gray sweatpants. The shorter man pointed the gun at Campbell and asked her to open the safe. After Campbell said that she did not have the code or the key, the shorter man asked her to open the register. The shorter man grabbed a bag and told her to put the cash in the bag. The taller man "came around and got cigarettes and swishers and then he went and got cigarettes." *Id.* at 26. Taken were Newport cigarettes and White Owl cigarillos. The shorter man then grabbed Campbell's phone, and the two men ran southbound out of the building. Campbell then called 911 and stated that the subjects were two black males.

[5] When police arrived, Campbell was extremely upset, crying, shaking, and terrified that the men were going to return. The police attempted to ping Campbell's phone and found that it had been turned off so they were unable to locate it.

[6] Later that morning, Johnson observed that Brown had a white Samsung phone. Brown told Johnson that he found it, that he thought it was dropped, and that he wanted to sell it. At some point that same day, Brown and two others went

to the home of Samuel Booker and sold a black revolver to a man for about ninety dollars.[1]

[7] At about 11:00 a.m., Chandler and Brown entered the gun store. Brown was wearing gray pants and white shoes with black trim. Chandler provided Robbins an address that did not match his identification, and Chandler and Brown left the store and returned around 4:19 p.m. at which point Chandler filled out an application to purchase a firearm at the gun store. The address on Chandler's identification was 2314 Yeager Road.

[8] Slightly after 6:00 p.m. that day, West Lafayette Police Officer Stacon Wiete ended his shift after viewing a photograph of an unmasked individual from the surveillance video of the Circle K gas station, was driving home, and recognized a person walking in front of his vehicle as the person in the photograph. Officer Wiete observed the individual and two others enter a building at 2314 Yeager Road, and contacted the duty shift commander.

[9] On August 9, 2014, Robbins, the owner of the gun store, contacted police after seeing a newspaper article regarding the robbery at the Circle K, and noting that a long-barreled revolver that he had previously seen was used in the robbery. West Lafayette Police Sergeant Jonathan Eager met with Robbins and showed

---

[1] During direct examination, Booker indicated that Brown and two others came over on August 8, 2014, and sold a gun. Following a question from the jury of what date the gun was sold, Booker answered: "I don't even know the date to be truthful." Transcript at 296. During redirect examination, the prosecutor asked Booker: "[D]o you know if it was during August of 2014?" Id. at 297. Booker answered: "It was like around August." Id.

him still images of the weapon used in the robbery at the Circle K. The police retrieved video from Robbins's surveillance cameras, as well as the firearms transaction report with the address of 2314 Yeager Road completed by Chandler. Sergeant Eager determined that the individual that entered the Circle K approximately an hour prior to the robbery appeared to be the same person on the video at the gun store. He also noticed that the individual with that person in the gun store was wearing white shoes with black trim and later determined that that person was Brown.

[10] That same day, Officer Wiete saw a BMV photograph of a subject, confirmed that it was of the person he had observed the previous day, and identified him as Chandler. At 10:45 p.m., West Lafayette Patrol Sergeant Kevin Flyn made a traffic stop of a minivan that was under surveillance and identified the driver as Johnson and the passengers as Chandler, Jenkins, and Brown. Officers transported the three men to the county jail and determined that Chandler's shoe size was ten and that Jenkins's shoe size was eleven. At the jail, West Lafayette Police Officer Jonathan Morgan asked Brown what size shoes he wore, and Brown said that he wore size eleven, but when Brown removed his shoes, Officer Morgan noticed that they were a size twelve.

[11] Meanwhile, the police took Johnson to the police station and then back to her apartment and executed a search warrant. The police recovered a gray sweatshirt, size twelve white and black Nike tennis shoes, size eleven gray and white Nike shoes, a black and red "dream chasers" hoodie, gray sweatpants with a cargo pocket near the thigh, a twenty-two caliber shell casing, Newport

cigarettes, two cell phones, one of which was a white Samsung phone later determined to belong to Campbell, a Circle K plastic bag containing opened cigarillos or cigars, and Chandler's wallet. *Id.* at 140. The Nike shoes appeared to be the same shoes in both the video at the gun store and the armed robbery at the Circle K worn by the taller man. A shirt also discovered by police appeared to be the same shirt worn by one of the men that was seen in the video of the armed robbery.

[12] On August 10, 2014, Sergeant Eager reviewed a statement of rights form with Brown, Brown signed the form, and Sergeant Eager interviewed him. He initially denied knowing about the robbery, but later admitted that he had knowledge of it and that Marqueese Huckabee and an unknown male had committed it. When asked about the white Samsung phone that belonged to Campbell, Brown said that he found it in a field or in the grass outside of 2314 Yeager Road and that the screen was flashing. He admitted to wearing the gray sweatpants and that the shoes belonged to him and stated that an unknown individual requested his shoes and clothing. Sergeant Eager later interviewed Huckabee and did not believe that he was involved in the robbery.

[13] On August 14, 2014, the State charged Brown, Chandler, and Jenkins with Count I, conspiracy to commit robbery as a level 3 felony; Count II, robbery as a level 3 felony; Count III, theft as a class A misdemeanor; and Count IV, theft

as a class A misdemeanor.[2]  On January 7, 2015, the State filed a motion to try Brown and Jenkins together, and the court later granted the motion.

[14] In February 2015, the court held a jury trial.  Campbell testified that she would be unable to identify the men that robbed her because they wore masks. Sergeant Eager testified that he interviewed Brown, that Brown initially denied knowing anything about the robbery, and that after he relayed certain facts to Brown, "that's when the story came out that it was these other people oh, and they were wearing my clothes." *Id.* at 235.  Johnson testified that Brown wore the sweatpants recovered during the search and that she never saw anyone else wear those sweatpants.  She also testified that she did not own a gun in August 2014 and that she had no reason to have bullets in her apartment.

[15] The jury found Brown guilty as charged.  The court found that Counts I, III, and IV merged into Count II, and entered judgment of conviction on Count II, robbery as a level 3 felony.  On March 30, 2015, the court held a sentencing hearing.  At the hearing, Brown stated:

> I want to take ownership to the crime.  I feel, I feel kind of bad
> for it.  I wish the victim was here, I could speak to her personally.
> Sorry to the State.  Sorry, you know, having everybody here in
> this courtroom here today.  Sorry, you know.  I don't really know

---

[2] The State initially charged Brown as "Andre Lavon Brown" and later amended the charging information to read "Andre Lavon Brown AKA Andre Brown, Jr."  Appellant's Appendix at 64.

what else to say. I feel bad about the situation. I can't take back the situation.

*Id.* at 377.

[16] The court found as mitigators that Brown took advantage of programs available to him while he had been in the Tippecanoe County Jail and obtained his high school equivalency diploma, that incarceration would cause an undue hardship on his dependent child, and that Brown had taken responsibility for his actions. The court found Brown's criminal history, the fact that he was recently off probation, that he was subject to a conditional discharge out of Lake County, and that he had a substance abuse history as aggravators. Brown was sentenced to ten years with eight years executed at the Department of Correction and two years suspended to supervised probation.

## Discussion

### I.

[17] The first issue is whether the evidence is sufficient to sustain Brown's conviction for robbery as a level 3 felony. Brown argues that the evidence is insufficient because Campbell could not identify him as one of the robbers and the evidence against him was entirely circumstantial. He argues that "[a]ssuming arguendo that there was sufficient evidence presented to demonstrate [he] was one of the perpetrators of the robbery, he was merely present at the robbery, and mere presence is not enough to sustain a conviction." Appellant's Brief at 14. The State argues that Brown's

companionship with Chandler and Jenkins, his possession of the unique revolver used in the robbery, his physical appearance and clothing, his sale of the revolver after the robbery, and the recovered stolen items support his conviction.

[18] When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995), *reh'g denied*. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

[19] Elements of offenses and identity may be established entirely by circumstantial evidence and the logical inferences drawn therefrom. *Bustamante v. State*, 557 N.E.2d 1313, 1317 (Ind. 1990). Identification testimony need not necessarily be unequivocal to sustain a conviction. *Heeter v. State*, 661 N.E.2d 612, 616 (Ind. Ct. App. 1996). Inconsistencies in identification testimony impact only the weight of that testimony, because it is the jury's task to weigh the evidence and determine the credibility of the witnesses. *Gleaves v. State*, 859 N.E.2d 766, 770 (Ind. Ct. App. 2007) (citing *Badelle v. State*, 754 N.E.2d 510 (Ind. Ct. App. 2001), *trans. denied*). As with other sufficiency matters, we will not weigh the evidence or resolve questions of credibility when determining whether the identification evidence is sufficient to sustain a conviction. *Heeter*, 661 N.E.2d at 616. Rather, we examine the evidence and the reasonable inferences therefrom that support the verdict. *Id.*

[20] Ind. Code § 35-42-5-1 governs the offense of robbery as a level 3 felony and provides that "[a] person who knowingly or intentionally takes property from another person or from the presence of another person: (1) by using or threatening the use of force on any person; or (2) by putting any person in fear; commits robbery . . . ." "[T]he offense is a Level 3 felony if it is committed while armed with a deadly weapon . . . ." Ind. Code § 35-42-5-1. The State charged that Brown, Jenkins, and Chandler

> did knowingly or intentionally take property, to wit: U.S. Currency, merchandise, a cell phone, or other property, from another person or the presence of another person, to wit: Ellen Campbell, by using or threatening the use of force or by putting the said Ellen Campbell in fear, committed while armed with a deadly weapon, to wit: a handgun . . . .

Appellant's Appendix at 20.

[21] Brown concedes that where two people act in concert to commit a crime, each may be charged as a principal in all acts committed by the accomplice in the accomplishment of the crime. Regarding accomplice liability, Ind. Code § 35-41-2-4 provides that "[a] person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense . . . ." "'[A]n accomplice is criminally responsible for all acts committed by a confederate which are a probable and natural consequence' of their concerted action." *McGee v. State*, 699 N.E.2d 264, 265 (Ind. 1998) (quoting *Vance v. State*, 620 N.E.2d 687, 690 (Ind. 1993)). It is not necessary that a defendant participate in every element of a crime to be convicted of that crime under a

theory of accomplice liability. *Bruno v. State*, 774 N.E.2d 880, 882 (Ind. 2002), *reh'g denied*. In determining whether there was sufficient evidence for purposes of accomplice liability, we consider such factors as: (1) presence at the scene of the crime; (2) companionship with another at the scene of the crime; (3) failure to oppose commission of the crime; and (4) course of conduct before, during, and after occurrence of the crime. *Id.* A defendant's mere presence at the crime scene, or lack of opposition to a crime, standing alone, is insufficient to establish accomplice liability. *Tobar v. State*, 740 N.E.2d 109, 112 (Ind. 2000).

[22] The record reveals that on August 8, 2014, between 2:00 and 3:00 a.m., Chandler, who was staying with Brown in Johnson's apartment, entered the Circle K in West Lafayette and asked Campbell, the cashier, for a fifty dollar bill in exchange for two twenty dollar bills and a ten dollar bill. Shortly after 3:00 a.m., two men entered the Circle K, and one of the men pointed a gun at Campbell. Detective Greene described Brown as being "around six foot, six foot one, a hundred and sixty pounds" in August 2014. Transcript at 272. The jury was able to compare the descriptions of Brown, its view of Brown, and the persons on the surveillance video.

[23] Further, Brown was at the gun store with the gun with the long twelve inch barrel and left the gun store with the gun on August 5th. Robbins described the gun as being "very unique." *Id.* at 97. He also testified that, as a gun store owner, he saw a hundred guns per week and had seen only two of the particular kind of gun in Brown's possession. A similar gun was later used to commit the robbery.

The police discovered stolen items in the apartment where Brown had been staying. Specifically, they discovered Campbell's phone, Newport cigarettes, cigarillos, and a Circle K bag. The police also discovered twenty-two caliber rounds which were the same caliber as the weapon used during the robbery.

The police also discovered certain shoes and clothing in the apartment. The police recovered a pair of gray sweatpants with a cargo pocket which Detective Greene testified he believed were worn by the second suspect at the robbery. Johnson testified that Brown wore the sweatpants recovered during the search and that she never saw anyone else wear those sweatpants. Sergeant Eager testified that the shoes recovered from Johnson's apartment appeared to be the same shoes and clothes in the video recovered from the gun store and the Circle K. The sizes of the shoes recovered from Johnson's apartment matched the sizes of the shoes that Jenkins and Brown were wearing when they were taken to the jail. Again, the jury was able to compare the shoes and clothing with the shoes and clothing worn in the surveillance videos. The jury as fact-finder reasonably could have concluded that Brown was the taller man in the Circle K surveillance video.

To the extent that Brown asserts that he was merely present at the Circle K or acquiesced in the other man's actions, the record reveals that both men wore masks, that the taller man wearing Brown's shoes and sweatpants "came around and got cigarettes and swishers," and that both men ran out of the building. Transcript at 26. Based upon the record, we conclude that the State presented evidence of a probative nature from which a reasonable trier of fact

could have found Brown guilty beyond a reasonable doubt of robbery as a level 3 felony.

## II.

[27] The next issue is whether Brown's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[28] Brown argues that he did not appear to make any demands or threats toward the clerk and that he was not the main aggressor. He argues that he has a good history of working and that his criminal history is not violent.

[29] Our review of the nature of the offense reveals that Brown and another man entered the Circle K wearing masks shortly after 3:00 a.m., and that the shorter man pointed the gun at Campbell and asked her to open the safe, then asked her to open the register, grabbed a bag, and told her to put the cash in the bag. Brown took cigarettes and swishers. The shorter man grabbed Campbell's phone, and the two men ran southbound out of the building.

[30] Our review of the character of the offender reveals that Brown, born December 17, 1991, was charged with dealing in marijuana and possession of marijuana as class A misdemeanors in 2012. He was subject to a conditional discharge for one year on the dealing charge, and the case was pending at the time the presentence investigation report ("PSI") was completed. In 2012, the State charged Brown with minor consumption as a class C misdemeanor, but the case was dismissed. At some point, he was charged with operating while never receiving a license as a class C misdemeanor related to an alleged offense in 2012, but the case was dismissed. In 2013, he was convicted of interference with reporting of a crime as a class A misdemeanor. That same year, Brown was charged with carrying a handgun without a license as a class A misdemeanor, and the case was pending at the time of the PSI.

[31] Brown reported having one child who resides with her mother in Hammond, Indiana, and denied being court-ordered to pay child support. He completed the tenth grade and was suspended and expelled for fighting. In 2014, he obtained his high school equivalency diploma while in the county jail.

[32] Beginning in September 2009, Brown worked as a cook until he quit in June 2010. He worked from April to August 2011 in assembly but was fired due to "points." Appellant's Appendix at 125. He worked at Taco Bell between April 2012 and July 2012 and was terminated due to "no call no show." *Id.* He worked at McDonalds between January and December 2013, and at Wal-Mart between October 2013 and June 2014, but was terminated due to too many "points." *Id.*

[33] Brown reported first consuming alcohol at the age of fifteen, consuming one bottle of hard liquor per weekend between the ages of eighteen and twenty-one, first using drugs at the age of sixteen, using marijuana three times per day between the ages of sixteen and seventeen, and using marijuana all day between the ages of seventeen and twenty-one. He reported completing six months of outpatient treatment at Tricity in 2009. His overall risk assessment score puts him in the high risk to reoffend category.

[34] After due consideration of the trial court's decision, we cannot say that the sentence of ten years with eight years executed and two years suspended to probation is inappropriate in light of the nature of the offense and the character of the offender.[3]

## Conclusion

[35] For the foregoing reasons, we affirm Brown's conviction and sentence.

[36] Affirmed.

---

[3] At one point Brown argues: "Is Appellant really the worst of the worst, justifying an aggravated sentence of ten (10) years, with eight (8) years executed in the Department of Corrections? Criminal justice in this State is founded on the principle of reformation, and not of vindictive justice. *Ind. Const. Art. 18*." Appellant's Brief at 21. To the extent Brown suggests that his sentence violates Article 1, Section 18 of the Indiana Constitution, which provides that "[t]he penal code shall be founded on the principles of reformation, and not of vindictive justice," we note that the Indiana Supreme Court has held that "particularized, individual applications are not reviewable under Article 1, Section 18 because Section 18 applies to the penal code as a whole and does not protect fact-specific challenges." *Ratliff v. Cohn*, 693 N.E.2d 530, 542 (Ind. 1998), *reh'g denied*. To the extent Brown suggests that he received the maximum sentence, we note that Ind. Code § 35-50-2-5 provides that "[a] person who commits a Level 3 felony (for a crime committed after June 30, 2014) shall be imprisoned for a fixed term of between three (3) and sixteen (16) years, with the advisory sentence being nine (9) years." Thus, Brown did not receive the maximum sentence. Further, a portion of the sentence was suspended to probation.

Kirsch, J., and Mathias, J., concur.